JOHN ANDERSON AND OTHERS v. TWIN CITY
RAPID TRANSIT COMPANY AND OTHERS.

84 N. W. (2d) 593.

July 5, 1957—No. 37,045.

168

*Clarence O. Holten* and *James E. Dorsey,* for appellants.
*Harry H. Peterson* and *F. L. Palarine,* for respondents.

NELSON, JUSTICE.

This action by 33 former employees of defendants for breach of their employment contract was brought against the Twin City Rapid Transit Company, Minneapolis Street Railway Company, The St. Paul City Railway Company, The Minneapolis & St. Paul Suburban Railroad Company, Twin City Motor Bus Company, and The Transit Supply Company.

The defendant companies are engaged in the general public transportation business as carriers of passengers for hire over the streets and highways of St. Paul and Minneapolis and contiguous suburban areas. The defendants other than the defendant Twin City Rapid Transit Company are wholly owned, controlled, and operated subsidiaries of

the Twin City Rapid Transit Company. The plaintiffs are all members of the Twin Cities Division 1005, Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, which had been duly selected by the members thereof to be their bargaining representative in all matters between them and the defendants pertaining to their employment.

Early in 1953, amendments to the existing employment contract between the parties were agreed upon and adopted to cover the conversion from streetcars to buses. The contract as then amended provided for the use of a "conversion board" as follows:

"A board, consisting of one member chosen by the Company and one by the Union, *shall determine all questions with respect to the transfer of any employe from the Snelling Shops, Car Houses, Power Department and Track Department into the Bus Garage Mechanical Department, and lay-offs and promotions within such departments that may arise, pertaining to seniority, qualifications or other disputes in connection with the conversion affecting the employes in the above mentioned mechanical departments* * * *. If the two members so chosen are unable to agree, a third member agreed upon by the two members shall be appointed, or if they are unable to agree on the third member, the third member shall be chosen from a panel of 5 submitted by the Minnesota State Labor Conciliator, * * *." (Italics supplied.)

The contract further provided:

"An employe in any department that may be consolidated or abolished because of the conversion from street car to bus operation, * * * shall be allowed to exercise his seniority, if qualified, to transfer to any other job doing work of a similar nature in another department. The period of employment for determining the seniority of such employe shall commence with the date of his hire for continuous service with the Company in the department from which he is to be transferred."

Apparently, because of these amendments being made and because of the setting up of a conversion board, it was agreed that:

"There is to be no arbitration clause such as contained in Article 15 of the old contract, or as referred to in any other Article of the contract heretofore existing between the parties."

Another provision which was a part of the contract and which preceded in order of recital the provisions for the establishment of a conversion board, reads as follows:

"The employes required to operate Snelling Shops, Car Houses, Power Department and Track Department, until the discontinuance of street car operations, will be protected and provided with jobs where they can be fitted into the operations. They must bid on the jobs as they are posted to preserve any right to transfer to the Bus Garage. When an employe bids for a vacancy the Company may request that he stay on the job at which he is working. In the event the employe does so, then upon termination of street car operations, such employe shall be entitled to a position for which he is qualified, according to seniority based on date of hire, and shall have a right to replace a man with lower seniority if there is no vacancy.

\* \* \* \* \*

*"The Company shall not be required to create jobs for employes for whom they have no need."* (Italics supplied.)

Other contract changes deal with wage increases, pension benefits, permanent disability, and vacations.

It would appear that the purpose and function of the conversion board was the determination of all questions with respect to transfer of employees from the Snelling Shops, etc. into the Bus Garage Mechanic Department and layoffs and promotions within such departments that might arise pertaining to seniority, qualifications, or other disputes in connection with the conversion affecting the employees in the mechanic departments, and thus limited to the employees the purposes and the area of operations therein specifically designated. In other words, the establishment of this conversion board would provide a means of effecting transfers, layoffs, and promotions in the mechanic department designated therein including also other disputes that might arise in connection with the conversion affecting the said employees in the mechanic department.

The plaintiffs allege in their complaint that they are the beneficiaries of the contract as amended; that the defendants "wrongfully, fraudulently, wilfully, wantonly, maliciously and unlawfully, agreed, conspired

and joined together to break the said contract by discharging plaintiffs from their said employment and thereby to deprive them and to deny them their rights and privileges under the terms of said contract of employment with respect to all the rights, privileges and benefits above enumerated; and that pursuant to said agreement and conspiracy and in execution thereof defendants did in fact discharge plaintiffs from their said employment and thereby deprived plaintiffs of the said rights and privileges to which they were entitled and are entitled under said contract and the amendments thereof and additions thereto and denied to plaintiffs the said rights to which they were and are entitled thereunder"; and that they are entitled to general and exemplary damages by reason of being wrongfully discharged by defendants and demand judgment in such amounts in damages as alleged in their prayer of relief.

The defendants answering admit and allege that plaintiffs are beneficiaries of and are subject to and bound by the terms of the aforesaid "New Contract" and of the agreements relating to pensions, retirement, and group insurance. Defendants, except as to admissions or qualifications or otherwise having answered, deny each and every allegation of plaintiffs' complaint. The answer of defendants, however, contains no allegation that the plaintiffs' alleged discharges should have been arbitrated before the conversion board as a condition precedent to the maintenance of plaintiffs' action. It appears without dispute that defendants herein neither demanded arbitration or moved for a stay of this action in order that arbitration might be had, and it also appears without dispute that defendants neither sought nor offered arbitration.

The provisions for a conversion board do not include either the word "discharge" or the words "discharge of employees" as a question for the conversion board's determination.

The record on this appeal indicates that the discharge of plaintiffs is admitted and that the present arbitration provisions now in force and effect apply only to "transfers," "layoffs," and "promotions" in those mechanic departments mentioned or other disputes arising out of the same. The trial court took the view that the discharge of plaintiffs stands admitted by defendants. The question of what the parties to the contract intended by the provision: *"The Company shall not be required*

*to create jobs for employes for whom they have no need"* (italics supplied) remains open to construction and must be determined when and if this case proceeds to trial in the court below.

The defendants strongly contend that the word "layoff," as used in the conversion board provision, also includes discharge, that it must have been so intended, and that the words "layoff" and "discharge" are to be construed as interchangeable terms. We are unable to agree to that interpretation and we do not reach that conclusion. We think that these terms in common parlance and in industrial parlance have a normal meaning and that therefore the use of the one term and not the other is sufficiently clear to escape the charge of ambiguity. In Fishgold v. Sullivan Drydock & Repair Corp. 328 U. S. 275, 286, 66 S. Ct. 1105, 1112, 90 L. ed. 1230, 1241, 167 A. L. R. 110, 121, the court said:

"Discharge normally means termination of the employment relationship or loss of a position. In common parlance and in industrial parlance a person who has been laid off by operation of a seniority system and put on a waiting list for reassignment would hardly be considered as having been 'discharged.' "

In a footnote to that case the court added (328 U. S. 287, 66 S. Ct. 1112, 90 L. ed. 1241, 167 A. L. R. 121):

" 'Lay-off' is defined as 'A period during which a workman is temporarily dismissed or allowed to leave his work; that part or season of the year during which activity in a particular business or game is partly or completely suspended; an off-season.' Oxford English Dictionary, Supp."[1]

---

[1] Webster's New International Dictionary (2 ed.) (1950) defines "layoff" as follows:

"The act of laying off, esp. work or workmen; a period of being off or laid off work; a shutdown; a respite; also, one who lays off or is laid off."

It defines "discharge" in the following manner:

"Release or dismissal from an office, employment, etc.; as, the *discharge* of a workman."

Funk & Wagnalls New Standard Dictionary (1945) defines "layoff" and "discharge" as follows:

Layoff—"To dismiss temporarily, as workmen."

It was said by the court in State ex rel. Ausburn v. City of Seattle, 190 Wash. 222, 241, 67 P. (2d) 913, 921, 111 A. L. R. 418, 429:

"* * * A removal implies permanent separation from the service, while a suspension or *lay-off* implies a temporary separation from the service." (Italics supplied.)

In International Assn. of Machinists v. State, 153 Fla. 672, 680, 15 So. (2d) 485, 490, the court defined quits, discharges, and layoffs, citing in connection therewith the United States Bureau of Labor Statistics, Handbook of Labor Statistics, 1936, pp. 803 to 804. The court said:

"* * * A 'quit,' which is defined by the United States Bureau of Labor Statistics as a termination of employment by the worker because of his desire to leave, may result from dissatisfaction with wages, hours or conditions of labor. Sickness, disability, old age, death, or expected call to military service, may likewise be influencing factors. A 'discharge' is a termination of employment at the will of the employer, with prejudice, because of some fault on the part of the worker. Insubordination, tardiness, incompetence, slothfulness, and dishonesty are some of the more common causes of discharge. *A 'lay-off' is a termination of employment at the will of the employer, without prejudice to the worker, lay-offs may be due to lack of orders, technical changes, or the failure of flow of parts or materials to the job, as needed.* Whatever the causes, quits, discharges and lay-offs are classified as 'Labor separations.' " (Italics supplied.)

Of course, one whose employment terminates upon completion of a particular job for which he was employed is not discharged since a discharge is the termination of employment at the will of the employer with prejudice because of some fault on the part of the worker or on

---

Discharge (noun)—"A removal or dismissal, as of a workman, * * *."

Discharge (verb)—"To remove by dismissal; as, to *discharge* an employee."

The New Century Dictionary defines "layoff" as the act of laying off; a dismissing of workmen temporarily from employment. It defines "discharge" as follows: "to relieve of obligation, responsibility, etc.; also, to relieve or deprive of office, employment, etc.; dismiss from service."

some other ground upon which the employer chooses to base his right in effecting the discharge. To discharge an employee removing him from his employment there must be some affirmative action taken by the employer indicating that he will no longer be bound by employment contract. This court has commented as follows on the subject of discharge in Neid v. Tassie's Bakery, Inc. 219 Minn. 272, 274, 17 N. W. (2d) 357, 358:

"Any form of words which conveys to the servant the idea that his services are no longer required is sufficient to constitute a discharge. * * * A discharge presumptively means that the employer no longer needs or desires the employe's services; that he is done with him; and that all contract relations between them are at an end."[2]

There is a well-recognized rule in the law which holds that the expression of one thing is the exclusion of another; that the express enumeration of one or more instances of many belonging to the same class impliedly excludes the other. The Latin expression is *"expressio unius est exclusio alterius."* Under this maxim if a statute specifies one exception to a general rule or assumes to specify the effects of a certain provision, other exceptions or effects are excluded. Likewise it is also the rule that the mention of one person is the exclusion of another and that the expression in a contract of one or more things of a class implies the exclusion of all not expressed. This rule is applicable to contracts as well as to statutes, and it is not without its controlling element in the instant case. It seems to us that the meaning of the word "layoffs" must be given its normal meaning in its use in the paragraph setting up the conversion board. Any attempt to construe the word "layoffs" as including "discharge" under the rule above stated would result in the creation of an exception which would modify the contract. It must be kept in

---

[2]Also, see, Johnson v. Crookston Lbr. Co. 92 Minn. 393, 100 N. W. 225; Stitt v. Locomotive Engineers' Assn. 177 Mich. 207, 142 N. W. 1110; Gaspar v. United Milk Producers, 62 Cal. App. (2d) 546, 144 P. (2d) 857; In re Public Ledger (E. D. Pa.) 63 F. Supp. 1008; Missouri Pac. R. Co. v. Clement, 207 Ark. 389, 181 S. W. (2d) 240; National Labor Rel. Board v. Waterman S. S. Corp. 309 U. S. 206, 60 S. Ct. 493, 84 L. ed. 704; North Whittier Heights Citrus Assn. v. National Labor Rel. Board (9 Cir.) 109 F. (2d) 76; 1 Labatt, Master and Servant (2 ed.) § 183, et seq.

mind that we are here dealing with a subject that is wholly contractual and that it is not for this court to create or add exceptions or to remake the contract in behalf of either of the contracting parties. Where the contractual language is clear and unambiguous there is no room for construction. As we view the situation here, the word "discharge" cannot be read into the word "layoffs" nor can it be construed as an exception to the aforesaid exclusionary rule in the present situation, since the term "discharge" has a meaning of its own distinct and apart from the term "layoffs" and clearly falls within the said exclusionary rule applicable to contracts generally.[3]

In Minneapolis-Moline Co. v. Chicago, M. St. P. & P. R. Co. (8 Cir.) 199 F. (2d) 725, 730, the court said:

"* * * it is only where ambiguity exists that courts are required to resort to construction, and where the language is plain and unambiguous the contract must be enforced as written, as courts are not permitted to write contracts for the parties."

Courts must apply the clear provisions of an agreement or contract as they find it. We are inclined to the view that the plaintiffs having sought recovery upon the grounds of discharge, and the discharge of the plaintiffs standing admitted, any dispute growing out of the act of such discharge of the plaintiffs does not present an arbitrable question under the conversion board clause; that whatever rights the plaintiffs have, if any do exist when all the terms of the contract amendments are considered as a whole, present issues for determination by the courts.

We think it clear that the clause providing for a conversion board in the 1953 contract changes does not meet the provisions of our arbitration statute. There has been no compliance in that regard. The effect of whatever arbitration provisions that clause contains must and

[3]Egner v. States Realty Co. 223 Minn. 305, 26 N. W. (2d) 464, 170 A. L. R. 500; Matthews v. Minnesota Tribune Co. 215 Minn. 369, 10 N. W. (2d) 230, 147 A. L. R. 147; Wm. Lindeke Land Co. v. Kalman, 190 Minn. 601, 252 N. W. 650, 93 A. L. R. 1393; Park Const. Co. v. Independent School Dist. 216 Minn. 27, 11 N. W. (2d) 649; Thos. Beck & Sons v. Economy Coal Co. 149 Iowa 24, 127 N. W. 1109; Hearne v. Marine Ins. Co. 87 U. S. (20 Wall.) 488, 22 L. ed. 395; Gaspar v. United Milk Producers, *supra.*

will be governed by the rules applicable to common-law arbitration since our statute has preserved the right of common-law arbitration.[4] However, that clause limited to transfer of employees, layoffs, and promotions, and other disputes in connection with the conversion as therein specified, cannot be made effective in the field of discharge of employees which terminates their employment and all their contract relations with their employer, even though the right to common-law arbitration exists in this state.

Conceding for the sake of argument that the word "layoffs" also included discharge of employees, which the record does not disclose, we are nevertheless bound to reach the conclusion upon the state of the record that any rights which defendants may have had to arbitration, if any such right existed at the time plaintiffs commenced suit, have been waived. Defendants since the time of moving for summary judgment in this proceeding have contended that the termination of plaintiffs' employment alleged by them to be wrongful should first have been submitted to a conversion board such as provided for in the contract changes. Defendants concede that the labor contract does not use the term "discharge" but that it uses the term "layoffs" and the words "other disputes in connection with the conversion affecting the employees in the above mentioned mechanical department," as being matters over which the board has jurisdiction. They contend for an interpretation that the word "layoffs" as used in their conversion clause also includes discharge of employees as another matter over which the board has jurisdiction. In so arguing they assert that the contract must be taken by its four corners and that it is obvious therefrom that all grievances arising out of the reduction of the number of employees due to conversion to busses, was first to be submitted to a conversion board; that implicit throughout the contract is the fact that the employment of some workers would be terminated and that explicit in the contract is the provision that "The Company shall not be required to create jobs for employes for whom they have no need." The latter provision is no part of the paragraph or the provisions which provide for setting up the conversion board. They further argue that it would be a

[4]See, M. S. A. 572.01; Park Const. Co. v. Independent School Dist. *supra.*

strained and crippling construction of this new contract to say that it did not include among the subjects within the jurisdiction of the board, the grievance of an employee arising because he had been discharged and his employment terminated due to their conversion program.

■ We have stated and analyzed the contents of the conversion-board provisions. This court is being asked, after there has been an elimination of all former and other arbitration clauses contained in the old contract and a substitution therefor of the present conversion-board provisions, in effect, to write into those provisions the word "discharge" and thus modify the contract which the parties themselves openly entered into. The record submitted to the court on this appeal does not justify a modification of the contract as contended for by defendants.

It is not ordinarily the function of this court to rewrite, modify, or set aside contract provisions fully considered and agreed upon between contracting parties.

Since the contract agreed upon provides that defendants "shall not be required to create jobs for employes for whom they have no need" and it is argued by defendants that the fact is implicit throughout the provisions of the present employment contract that the employment of some workers would be terminated, even though the word "discharge" was not included in the conversion-board clause, we agree that the employment contract now in force must be considered as a whole and with regard to the related aspects of its various provisions as bearing upon termination of employment of those workers who have been or will be discharged. These are matters which will properly stand for determination at a trial of the issues which have heretofore been joined.

■ The defendants strongly contend that they are entitled under the new provisions of the employment contract to "arbitrate" any disputes which may arise from the discharge of employees. Conceding defendants' claim, for the sake of argument, that the provisions setting up the conversion board include by implication "discharge" in addition to "layoffs," we are at once confronted with the question whether defendants have waived any and all rights to arbitrate. Defendants admit in their answer the existence of the terms of the employment contract and deny by general allegations the wrongful discharge of plaintiffs. The

answer contains no allegations that the alleged discharges of plaintiffs by defendants should have been arbitrated before the conversion board as a condition precedent to the maintenance of the action. At no time have defendants made any offer to arbitrate or sought arbitration. They have neither demanded arbitration nor moved for a stay of this action in order that arbitration might be had on the issue of discharge as a disputed question. The action was commenced in November 1954 and defendants' answer was filed in December 1954. Plaintiffs served a note of issue on defendants in which they demanded a jury trial on January 3, 1955. Plaintiffs thereafter had the case set on the court calendar as a case to be tried by jury. Except for moving for a summary judgment, it does not appear that defendants otherwise challenged the rights of plaintiffs to a jury trial. It was not until after the case had been set for trial on a day certain, namely, April 19, 1956, that defendants made a motion for summary judgment to be heard following the date on which the case had been set for trial. There is no satisfactory indication that defendants prior to noticing this motion made claim to any right to arbitration as regards the discharge of employees. This move on the part of the defendants did not occur until approximately 16 months after the plaintiffs had instituted this action. One of the reasons for arbitration clauses in contracts is to provide a means for the speedy settlement and adjustment of differences; and as such a provision can only be carried into effect by the concurrent action of both parties, neither can rightfully refuse to act with reasonable promptness when the other demands that such action be taken. Neither can rightfully postpone his concurrent action for the purpose of forcing the other to a settlement. See, Radiator Specialty Co. v. Cannon Mills (4 Cir.) 97 F. (2d) 318, 117 A. L. R. 299. If one in bad faith prevents or postpones unreasonably the carrying into effect of this stipulated method of adjusting rights between parties, by refusing to participate where his participation is necessary, he ought not to be heard to plead in defense of an action to recover upon the contract that the stipulated mode of adjustment has not been pursued.

The record in the instant case clearly presents a question of fact as to whether the so-called conversion board provided for in the new contract ever came into existence and functioned. It is apparent that there

was a failure to properly organize a conversion board. Both sides may have been at fault in that respect. It never functioned in fact as provided for in the employment contract. There was no provision in the contract that a decision of the conversion board, if it had in fact been fully set up as provided, should be a condition precedent to any right to legal action. Whatever right to arbitrate existed, it was a right the choice of which rested on either party, and those provisions as far as effective were as binding on one party as the other. In fact, both parties had proceeded without wholly recognizing the conversion-board clause and disregarding the same for more than a year. The plaintiffs, whether bound by the clause or not, repudiated it by commencing this lawsuit and the defendants joined in the repudiation by answering to the merits without a demand for arbitration or a motion to stay the suit until arbitration could be had. Almost uniformly such conduct on the part of the parties constitutes an abandonment or waiver of the right to arbitration and a consent to the submission of the controversy to the courts. This rule has been established by an almost uniform line of decisions and this rule is not a new one in this jurisdiction. Independent School Dist. v. A. Hedenberg & Co. Inc. 214 Minn. 82, 7 N. W. (2d) 511; Meyer v. Berlandi, 53 Minn. 59, 54 N. W. 937; Matter of Zimmerman v. Cohen, 236 N. Y. 15, 139 N. E. 764.

Since the record herein indicates that any agreement to arbitrate through a conversion board never became operative, as such, any claimed agreement binding on the part of the plaintiffs not to sue without arbitration, if in fact they were subject to arbitration, being dependent upon an agreement to arbitrate, would also remain inoperative. 3 Am. Jur., Arbitration and Award, § 56.

This court, commenting on the action of the parties in Independent School Dist. v. A. Hedenberg & Co. Inc., said (214 Minn. 92, 7 N. W. [2d] 517):

"The decisive facts here are that both parties from the inception of their dispute proceeded in entire disregard of the provisions of the contract relating to arbitration and that neither at any stage of such dispute, either before or after commencement of the action, demanded arbitration, either by oral or written demand, pleading, or otherwise. Their conduct was as effective a rejection of the right to arbitrate as if, in the

best Coolidge tradition, they had said, 'We do not choose to arbitrate. As arbitration under the express provisions of article 40 was 'at the choice of either party,' and was chosen by neither, a waiver by both of the right to arbitration followed as a matter of law."

We think under all the circumstances which this controversy presents that, after issue had been joined on the merits without any demand for arbitration or motion for a stay in order that arbitration might be had, it was too late for the defendants to draw back or retrace their steps and compel arbitration. An attempted reservation of that right at this time would be futile. As was said by Judge Patterson in the case of *The Belize* (S. D. N. Y.) 25 F. Supp. 663, 664:

"This conclusion is unavoidable on the law of contracts. It is also supported by practical considerations. When a party who has agreed to arbitrate any controversy that may arise prefers to take a controversy to court in the ordinary way, there comes a time in the course of the litigation when it would be unfair to permit one side to resort to arbitration over the protest of the other. That time is reached when the defendant files an answer on the merits, joining with the plaintiff in rejecting arbitration and tendering the controversy to the court for trial."

■ Commencement of suit in a court rather than reliance upon arbitration, with answer by the opposing party upon the merits, is a waiver of the right to arbitrate by both parties. Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co. (7 Cir.) 128 F. (2d) 411.

Waiver may be shown by acts and conduct and sometimes by nonaction. It is essentially unilateral and results as a legal consequence from some act or conduct of the party against whom it operates, without any act of the party in whose favor it is made being necessary to complete it.[5] It is a doctrine which applies to all rights and privileges to which a person is legally entitled. Waiver implies relinquishment of a legal position and is effected by the act of waiving or in insisting upon

[5]Coleman Production Credit Assn. v. Mahan (Tex. Civ. App.) 168 S. W. (2d) 903; Concrete Engineering Co. v. Grande Bldg. Co. 230 Mo. App. 443, 86 S. W. (2d) 595; The Praetorians v. Strickland (Tex. Civ. App.) 48 S. W. (2d) 690; see, Annotations, 161 A. L. R. 1428 and 117 A. L. R. 304.

some right, claim, or privilege. In Hohag v. Northland Pine Co. 147 Minn. 38, 40, 179 N. W. 485, 486, this court said:

"* * * 'waiver is either the result of an intentional relinquishment of a known right or an estoppel from enforcing it,' * * *."

Both intent and knowledge, actual or constructive, of the facts are essential elements; the intent may be inferred from facts and circumstances, as well as found in the declarations of the parties, and the knowledge thereof may also be either actual or constructive. Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106 N. W. 485, 4 L. R. A. (N. S.) 231, and cases cited therein; also, see, Engstrom v. Farmers & Bankers Life Ins. Co. 230 Minn. 308, 41 N. W. (2d) 422, and cases cited therein.[6]

It is our view that the foregoing rules are equally applicable in cases involving labor contracts where there is a provision for arbitration even though by the terms of the contract it has been made a condition precedent to suit. When that situation arises and the employer has discharged the employee without first having demanded arbitration, the employee may sue the employer on the contract for such damages as he may have sustained. The rule seems to be well settled under the decisions in this state that the unqualified denial of liability by the employer to the employee under a contract of employment containing an arbitration clause operates as a waiver of the contractual provision to arbitrate matters with respect to which the employee asserts liability. The effect of the waiver by the defendants of the right, if any, to arbitrate is that such alleged right is gone beyond recall. Anderson v. M. Burg & Sons, Inc. 170 Minn. 53, 212 N. W. 9.

This court held in Engstrom v. Farmers & Bankers Life Ins. Co. 230 Minn. 308, 312, 41 N. W. (2d) 422, 424, that:

"No consideration is required to support a waiver. Clark v. Dye [158 Minn. 217, 197 N. W. 209], *supra.* Where a party intentionally relin-

---

[6]Knutson v. Lasher, 219 Minn. 594, 18 N. W. (2d) 688; Independent School Dist. v. A. Hedenberg & Co. Inc. 214 Minn. 82, 7 N. W. (2d) 511; Anderson v. M. Burg & Sons, Inc. 170 Minn. 53, 212 N. W. 9; Cash v. Concordia Fire Ins. Co. 111 Minn. 162, 126 N. W. 524; *The Atlanten,* 252 U. S. 313, 40 S. Ct. 332, 64 L. ed. 586.

quishes a known right by waiver, he cannot, without consent of his adversary, reclaim it. * * * [Citing cases.] A waiver, once established, is irrevocable even in the absence of any consideration therefor."

See, also, American Locomotive Co. v. Gyro Process Co. (6 Cir.) 185 F. (2d) 316.

The defendants appear to contend that where the contract requires a matter to be submitted to arbitration, an employer can arbitrarily discharge his employee without himself first resorting to arbitration. We have already stated that we consider the conversion-board provisions of the instant contract binding on both parties; that is, as binding on one party as on the other. It is not a one-way road. That proposition is an elementary one in the field of arbitration. The rule is uniformly recognized and does not in fact require citation of authority to support it. We submit the following quotation from Lyons v. St. Joseph Belt Ry. Co. 232 Mo. App. 575, 594, 84 S. W. (2d) 933, 946:

"There is no merit in defendant's contention that plaintiff was estopped to complain of his discharge by defendant by reason of his failure to request a hearing. It was not incumbent upon plaintiff, under the evidence, to request a hearing; but it was incumbent upon defendant to give him one before discharging him. Besides, if it had been plaintiff's duty so to have done, he was given no opportunity to do so. He was discharged by defendant without notice and without any knowledge that there was a charge against him that might be investigated."

The basis of defendant's motion for summary judgment before the trial court was that plaintiffs had not exhausted their contract remedies under the union contract; hence, that the complaint did not state a claim on which relief could be granted; and that it presented no genuine issue as to any material fact. They contend that the rule in the Hedenberg case is no longer law in Minnesota since it has been cut across and repealed by the Minnesota rules of civil procedure as adopted and in effect since January 1, 1952. Defendants respectfully submit that the rules on summary judgment, Rules 56.02 and 56.03 of Rules of Civil Procedure, show that the defendants may move therefor at any time. The latter stands admitted and there is no contention to the con-

trary. Defendants, however, contend that these rules negative expressly any theory that the harsh doctrine of waiver in circumstances such as existing in the instant case can be invoked in the enlightened days in which the present rules furnish guidance to bench and bar. Defendants might with equal right have moved to dismiss plaintiffs' action on the ground that it failed to state a claim upon which relief can be granted which is permitted under Rule 12.02. They might likewise have moved to amend their pleadings under Rule 15.01 which was not done. We are unable to go along with defendants in their contention that the rules of civil procedure negative and eliminate the doctrine of waiver, in any degree, any more than if it should be claimed that the same rules had eliminated the doctrine of estoppel. Both doctrines have found their place in our substantive law, which the rules of civil procedure neither have nor could legally attempt to change, these rules being limited to governing the procedure in the district courts of this state and not in any respect to legislate where substantive law is involved.[7]

Both parties in connection with the motion for summary judgment herein took advantage of their right to file supporting affidavits for and against the motion. The supporting affidavits became a part of the record free from motion to strike by either party. These affidavits were received without objection and considered by the trial court as constituting a part of the record upon which decision was to be rendered. Under the circumstances they were properly considered by the court below for what they were worth. That they are now objected to on this appeal on the grounds of hearsay does not eliminate them from the record.

Depositions were taken in the case as early as December 23, 1954. These have not been included as a part of the record and there is no indication that anyone claims that the question of arbitration was then considered by either side, the deponents being officials of defendants.

---

[7]*Substantive law* is that part of law which creates, defines, and regulates rights, as opposed to "adjective or remedial law," which prescribes method of enforcing the rights or obtaining redress for their invasion. Black, Law Dictionary (4 ed.) p. 1598, citing Maurizi v. Western Coal & Min. Co. 321 Mo. 378, 11 S. W. (2d) 268; Mix v. Board of County Commrs. 18 Idaho 695, 112 P. 215, 32 L. R. A. (N. S.) 534.

No one contends that the conversion board, had it come into actual existence and had it been made to function during the times mentioned in the pleadings, would not have been operative under the rules of common-law arbitration. However, insofar as the record discloses, the parties appear to have proceeded as though a conversion board was nonexistent. In fact, there does not appear to have been an organized conversion board set up and functioning, to which either plaintiffs or defendants could resort. With regard to the right of either party to resort to a conversion board, we are unable to find any provision limiting the right to arbitrate to one, only, of the parties to the employment contract. We conclude that whatever rights of arbitration were provided for by the conversion clause were provided for the benefit of both parties to the contract. The opening paragraph to the proposals for the 1953 contract changes reads as follows:

"We propose to enter into a new agreement between the undersigned four subsidiaries of Twin City Rapid Transit Co. and your Union, representing the membership, to be negotiated and agreed upon and in such new contract we propose to incorporate the following specific conditions:"

The contract changes nowhere contain any provision that either party must exhaust any specific contract remedy through arbitration as a condition precedent to suit. The defendants discharged the plaintiffs. The termination of their employment was absolute and complete. Their contract relations were severed. The plaintiffs claim that they were wrongfully discharged and this the defendants deny and answer on the merits without application for stay or demand for arbitration. Thereupon there was nothing for either plaintiffs or defendants to initiate before the conversion board, even if it be assumed that the conversion board if it had been made effective included disputes in the field of discharge as well as in effecting changes, promotions, and layoffs.

The record as submitted presents questions of fact as to whether the so-called conversion board ever came into existence and functioned as such, and if it did, then the question also arises whether the right to discharge employees was included as one of the subjects arbitrable, in case of dispute, before the conversion board. These matters were not

for determination by the court below on a motion for summary judgment and the trial court so held in regard to certain fact issues. Since the record discloses no objection to hearsay evidence, at the proper time, contained in the plaintiffs' supporting affidavits, the credibility thereof became one for the trier of fact, in this instance the judge of the trial court.

■ We think the rule well established that, in passing upon a motion for summary judgment, it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. It is also the rule that all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment for the court is without right to draw inferences favorable to a movant for summary judgment or pleadings. When that situation arises all reasonable intendments and inferences from the pleadings are, as a matter of law, to be taken against the movant and in favor of the opponent. It is the rule that a motion for summary judgment should be denied if under the evidence reasonable men might reach different conclusions.[8]

■ We believe that a genuine dispute exists as to certain fact issues between plaintiffs and defendants. This court will not undertake to decide any issues of fact upon the record herein. Both sides have the right to have a jury determine the fact issues upon a trial in which all the evidence respecting these matters may be received after thorough investigation, the marshalling of the facts, and the opportunity to thoroughly test the admissibility of the evidence. The contract provides that all former arbitration clauses have been eliminated and further provides that the company shall not be required to create jobs for employees for whom they have no need. The question will necessarily arise whether defendants were in fact discharged and whether under the provisions herein considered such discharge was in violation of the contract of employment as amended. Otherwise all facts relative to these matters in dispute must be developed pursuant to the allegations of the complaint, the answer, and the affidavits received below in the proceedings for summary judgment.

---

[8]Peters v. Minnesota Dept. of Ladies of Grand Army of Republic, 239 Minn. 133, 58 N. W. (2d) 58; Wright, Minnesota Rules, p. 322.

In view of our conclusions, other issues raised on this appeal will not be considered. The order appealed from is affirmed and the case remanded to the court below for trial.

Affirmed.