**In re the Marriage of Carol Rae VAN-DERLEEST, Petitioner, Appellant,**

v.

**Wayne Henry VANDERLEEST, Respondent.**

**No. C4–83–1506.**

Court of Appeals of Minnesota.

June 19, 1984.

Malcolm H. Greenberg, Greenberg, Colosimo & Patchin, Ltd., Virginia, for appellant.

James C. Giblin, Virginia, for respondent.

Heard, considered, and decided by POPOVICH, C.J., and FORSBERG and RANDALL, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from an order denying the appellant-wife's post-dissolution motion for an order requiring the respondent-husband to pay her half of all future Railroad Retirement disability payments he receives. She also sought a money judgment representing half of the benefits he has received to date. The trial court found that, while the stipulation entered into by the parties required the respondent to pay the appellant half of all Railroad Retirement pension benefits received, a difference between pension and disability benefits meant that the stipulation did not cover disability benefits. We reverse and remand.

## FACTS

The parties were divorced in 1981 after 22 years of marriage. They have four children, only two of which are affected by this action. Appellant was granted custody. Respondent made child support payments of $400 per month, for two children, until March of 1983, and of $200 per month, for one child, after that date. Respondent's child support obligation will end

on May 24, 1985, when the youngest child turns 18. At the time of the dissolution, respondent was 48 and had take home pay of approximately $2000 per month from the Railroad. Appellant was 41 and had a take home pay of approximately $1200 per month from U.S. Steel.

At the time of the dissolution, the parties entered into a stipulation, the terms of which were incorporated in the decree. Appellant was awarded the parties' home, subject to a lien in respondent's favor which she has paid off prematurely pursuant to respondent's request. Also, she was awarded a vested interest in respondent's U.S. Navy and Railroad Retirement pensions, with the right to receive "monthly benefits in amounts equal to or 50% of any amount that is due and paid to the respondent when benefits are received by the respondent or when the respondent reaches 60 years of age, whichever event occurs sooner." At the time of the divorce, the respondent had suffered one heart attack and there was some evidence of anticipated health problems in the near future.

A little more than a year after the divorce, in November of 1982, the respondent ceased working and began receiving a monthly Railroad Retirement benefit of $797.26 in the form of a "disability annuity." The respondent did not notify the appellant of the receipt of this benefit or pay her any of it, and denied that he owed her any of it, under the terms of the decree or otherwise.

Also in November of 1982, the respondent applied for Social Security benefits. As of May 3, 1983, he had not begun to receive Social Security payments, but it was stipulated that the total amount of monthly benefits the respondent will receive from the Railroad Retirement Board, including Social Security benefits, will be $799.12. Each minor daughter also qualified for money benefits due to her father's disability—Dawn received $63 for two months in 1983 before she turned 18, and the youngest, Amy, is receiving $130 a month. Amy's benefits will continue until May 24, 1985.

## ISSUES

1. Is appellant entitled at this time to receive one half of respondent's monthly Railroad Retirement disability payment?

2. Is appellant entitled to a money judgment against respondent retroactive to November, 1982, for 50% of respondent's disability annuity benefits?

## ANALYSIS

### Scope of review:

■ Since this case turns upon the interpretation of the stipulation incorporated into the parties' dissolution decree, we need give no deference to the findings of the trial court. The interpretation of written documents is a question of law, and we may examine this matter *de novo*. *Ploog v. Ogilvie*, 309 N.W.2d 49, 53 (Minn.1981); *Halper v. Halper*, 348 N.W.2d 360, 363 (Minn.Ct.App.1983).

### Stipulation:

■ The stipulation entered into by the parties and incorporated into the dissolution decree included the following provision:

7. The respondent is awarded all interest in his pension plan with the United States Navy and Railroad Retirement Board subject to petitioner's vested interest in both pensions in the sum of 50%. The petitioner shall receive monthly benefits in amounts equal to or 50% of any amount that is due and paid to the respondent when benefits are received by the respondent or when the respondent reaches 60 years of age, whichever event occurs sooner. This award to petitioner of part of the respondent's pension plans is referred to as the "vested delayed payment method."

The provision grants the appellant 50% of "any amount" due and paid to the respondent, not just of any *retirement* benefit. Respondent's monthly disability benefit is a benefit received by respondent by reason of his overall pension plan with the

Railroad Retirement Board. As such, it falls within the scope of the provision. The written stipulation had been negotiated by the two attorneys for the parties, each having the opportunity to suggest clauses to the other or object to suggested clauses. A reviewing court is obligated to attempt to interpret the actual words used by the parties, and there is a presumption they meant what they said.

■ The provision is unambiguous. Its meaning can be determined without any guide other than knowledge of the facts on which the language depends for meaning. *Starr v. Starr*, 312 Minn. 561, 251 N.W.2d 341, 342 (1977); *Anderson v. Twin City Rapid Transit Co.*, 250 Minn. 167, 84 N.W.2d 593, 599 (1957). Any attempt to restrict the word "benefits" in paragraph 7 to include retirement benefits and exclude disability annuity benefits would result in the creation of an exception not called for by the written language. *Anderson*, 84 N.W.2d at 599.

If extrinsic evidence was admissible, and needed to resolve a claimed ambiguity, respondent's health problems at the time of the dissolution, coupled with the wording in the stipulation, still lead to the above result. If respondent had been healthy and both sides contemplated he would work to normal retirement and begin drawing his Railroad pension at age 60 or after, there would have been no need for the following words in the dissolution decree: "... when benefits are received by the respondent or when the respondent reaches 60 years of age, *whichever event occurs sooner.*" (Emphasis added.) Respondent, had he not qualified for a disability annuity, could not receive the retirement pension before age 60. Thus, since the parties, in negotiating the stipulation, added language stating that appellant would receive monthly benefits in the amount of 50% of any amount due and paid to respondent when the benefits were received by him before age 60, if the benefits started before age 60, the logical conclusion is the parties anticipated the possibility of monthly benefits being received before the age of 60, and those

contemplated benefits reasonably had to be disability annuity benefits.

■ Respondent argues that disability benefits cannot be marital property, as the definition of marital property in M.S.A. § 518.54, Subd. 5, includes the example of vested pension benefits or rights but does not specifically include disability benefits as another example. The Minnesota Supreme Court faced a similar question in *Janssen v. Janssen*, 331 N.W.2d 752 (Minn. 1983). There it was argued that since M.S.A. 518.54, Subd. 5 included vested pension benefits or rights, marital property did not include a nonvested and unmatured pension. The Supreme Court, citing the history of its own cases on analyzing pensions, both vested and non-vested, as property rights, found that an unmatured unvested pension could be a marital asset to be divided even though not specifically identified in M.S.A. 518.54, Subd. 5. The Supreme Court went on to state:

> "A term whose statutory definition declares what it "includes" is more susceptible to extension of meaning by construction than where the definition declares what a term "means." Thus, it has been said that the word 'includes' is usually a term of enlargement, and not of limitation .... It, therefore, conveys the conclusion that there are other items includable, though not specifically enumerated ..."

331 N.W.2d at 756. (Citing Sutherland, *Statutory Construction*, § 47.07.) *See Deliduka v. Deliduka*, 347 N.W.2d 52 (Minn.Ct.App.1984).

■ Thus, we find that respondent's right to receive a disability annuity can be construed as a marital asset to be divided. Respondent's right to receive his disability annuity resulted from years of working for an employer while married to appellant. She should not be denied the right to share in that benefit merely because disability rights are never strictly mature in the sense that a vested pension is, since no matter how long you work for any employer, you do not get disability benefits unless you become disabled. A retirement pen-

sion, depending on the terms of employment, can vest after a specified term of years, commonly 20, 25 or 30, although earlier vesting is possible. Your right to receive a disability annuity may become a property right or chose in action after a certain number of years of service with your employer, depending on the terms of employment, but may never mature and actually start paying you dollars if you finally retire from your job never having suffered ill health. A benefit does not have to be fully vested and fully mature to be considered divisible. *See Janssen*, 331 N.W.2d 752, 756.

■ The respondent further argues that since M.S.A. 518.54, Subd. 6, includes disability payments in the definition of income, therefore disability payments must be limited to income or wages and cannot be property. An examination of M.S.A. 518.54, Subd. 6, shows that examples of income, in addition to wages, salaries and disability payments, also include *annuity, military* and *naval retirement*, and *pension* payments. Thus, some examples of income are both income under Subd. 6 and marital property under Subd. 5. Subd. 6 of 518.54 cannot be read to include only items of income since it mentions, among others, pension payments and those are listed above in Subd. 5 as marital property.

In examining the disputed paragraph in the stipulation and dissolution decree, the logical interpretation of the words "... 50% of *any amount* that is due and paid to respondent *when benefits are received* by the respondent or when the respondent reaches 60 years of age, *whichever event occurs sooner*" (emphasis added), supports appellant's position. *See Starr* and *Anderson, supra.*

■ Respondent points out accurately that if he is required to pay appellant retroactively to November of 1982 half ($398.63) of each disability payment ($797.66) and $200 per month per child, then from November of 1982 until June of 1983, he would be paying 100% of his disability annuity to appellant, and from June of 1983 until May 24, 1985, he would be sending appellant 75% (approximately $600 per month out of $800 per month income) of his total income. It would be an unconscionable result to both award appellant 50% of respondent's disability annuity, as she requests, *and* require respondent to pay child support of $200 per month per child, a figure which was negotiated at a time when respondent was fully employed with a net take home per month of approximately $2,000.

By granting appellant 50% of respondent's present disability annuity (now $799.12 a month), respondent's net income per month is reduced to $399.56. An examination of Minn.Stat. § 518.551 (1983), the recommended child support payment guidelines, shows net income of less than $400 per month results in no recommended amount of child support regardless of the number of children. The next column showing net income per month of an obligated provider receiving between $401 and $500 per month shows recommended child support of 17% of net for two children. Assuming respondent's net income, after deducting the 50% share appellant is entitled to, is raised to $401 per month, the total recommended child support for two children is $68.17 a month. Through respondent's combined Railroad Retirement and Social Security benefits, the parties' youngest daughter will receive $130 per month until she turns 18 on May 24, 1985, a sum approximately twice as much as the recommended guidelines. For these reasons, although we grant appellant her request for 50% of the disability annuity, it cannot be retroactive and her award will not commence until June 1, 1985, when respondent is relieved of his present obligation to pay $200 per month child support.

## DECISION

The appellant is entitled, under the stipulation entered into by the parties and incorporated into the decree of dissolution, to receive one-half of respondent's monthly disability annuity.

Reversed and remanded for entry of judgment against respondent entitling appellant to half of any monthly benefits received by respondent beginning June 1, 1985.