Abe L. FOX and Shirley J. Fox; Estate of Phillip W. Pillsbury, Deceased, George S. Pillsbury and Charles S. Bellows, co-personal representatives and Corinne Pillsbury; John K. Whitney and Helen W. Whitney; Donald A. Jacobson and Sharon L. Jacobson; Estate of Starke R. Hathaway, Deceased, F & M Marquette National Bank, Representative and Virginia Hathaway; Northstar Computer Forms, Incorporated; and Raymond Dykema and Jeanne Dykema; and Thomas H. Wyman and Elizabeth M. Wyman, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 88–1278.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 18, 1988.

Decided May 11, 1989.

---

James A. Beitz, Minneapolis, Minn., for appellants.

Kimberly S. Stanley, Washington, D.C., for appellee.

Before HEANEY * and BEAM, Circuit Judges, and LARSON,** District Judge.

BEAM, Circuit Judge.

Fox and other taxpayers, partners in the Cedar Riverside Land Company, challenge the Tax Court's [1] decision in favor of the Internal Revenue Service. The Tax Court upheld the Commissioner's disallowance of deductions taken by the taxpayers for interest accrued in 1978. We affirm.

## I. BACKGROUND

### A. Facts

Each taxpayer is a limited partner of Cedar Riverside Properties (CRP), a Minnesota limited partnership. CRP is a general partner of the Cedar Riverside Land Company (CRLC), a Minnesota general partnership. CRP and CRLC use the accrual method of accounting for tax purposes.[2]

In 1971, CRLC acquired real estate for development pursuant to a federally-assisted urban renewal plan. CRLC financed the acquisition by issuing $24 million of debentures, which were guaranteed by the New Community Development Corporation (NCDC), a division of the Department of Housing and Urban Development (HUD). NCDC held a security interest in the land.

The Indenture Agreement between CRLC and NCDC contains three sections relevant to this appeal. Section 5.01 states, "[CRLC] will duly and punctually pay the principal of and interest on the Debentures according to the terms thereof and of this Indenture." Section 5.25 discusses the CRLC's repayment of any Guarantee Payment made by the Secretary of HUD (Secretary) and payment of the interest thereon.[3] Section 5.28 addresses the Secretary's ability to waive sections 5.02 and 5.04 through 5.27.[4]

Development was delayed and CRLC did not pay the interest, advances, and fees owed on the debentures. On November 29, 1977, in accordance with its guarantee, NCDC cured the debenture defaults, but CRLC did not repay NCDC the amounts advanced. In January of 1978, the Secretary drafted a letter which purported to waive interest for 1978 on the accelerated principal payment made by NCDC.[5] The

* The HONORABLE GERALD W. HEANEY assumed senior status on January 1, 1989.

** The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Mary Ann Cohen, Judge, United States Tax Court.

2. Unlike cash basis taxpayers, who are entitled to deduct interest expenses only in the year in which the interest is paid, Treas.Reg. § 1.446–1(c)(1)(i) (1988), accrual basis taxpayers are entitled to deduct interest in the year in which it is incurred, whether or not such interest is actually paid in that year. Treas.Reg. §§ 1.446–1(c)(1)(ii), 1.461–1(a)(2) (1988); *United States v. Anderson,* 269 U.S. 422, 424, 46 S.Ct. 131, 132, 70 L.Ed. 347 (1926).

3. Section 5.25 provides in relevant part:
    *Reimbursement of Payments under Guarantees; Interest on Delinquent Payments.* Immediately upon the payment by the United States or the Secretary of any amount under any Guarantee or under Section 6.02(b) (herein called a "Guarantee Payment"), the Company

will pay to the Secretary the amount of such Guarantee Payment. The Company will pay to the Secretary on demand interest on the amount of any Guarantee Payment * * * at the rate borne by the Debentures in respect of which such Guarantee Payment has been made * * * from the date of such Guarantee Payment until reimbursement thereof to the Secretary in full * * *.

4. Section 5.28 states:
    *Consent of the Secretary.* The covenants of the Company in Section 5.02 and Sections 5.04 through 5.27 of this Article V are solely for the benefit of the United States and are subject to the provision that with the prior written consent of the Secretary delivered to the Trustee and the Company the performance of such covenants may be varied or excused.

5. The letter stated in part:
    Under my authority and under the provisions of Section 5.28 of the Indenture of Mortgage * * *, I hereby waive interest from and after January 1, 1978 on the $24,000,000 of accelerated principal payment made by the

underlying purpose of the waiver was to prevent CRLC from prolonging settlement of its outstanding debt in order to continue accruing interest deductions. Notice of waiver was sent to CRLC on February 4, 1978.

On February 8, 1978, NCDC instituted foreclosure proceedings on the project but did not seek payment for interest accruing after January 1, 1978. CRLC responded that NCDC was precluded from exercising its rights under the Indenture because it had breached the contract in several ways, including the failure to file an adequate environmental impact statement. CRLC did not challenge the validity of the Secretary's waiver in the foreclosure litigation. The foreclosure action was settled in 1980 and as a result the Indenture was refinanced.

On its 1978 partnership return, CRLC accrued and deducted $1,728,000 in interest on debentures, $435,866 in interest on unpaid interest and unpaid annual fees, and $120,000 in annual fees. Each taxpayer deducted his or her distributive share of the partnership loss reported on CRLC's return. The Commissioner disallowed the portions of the partnership loss attributable to the deduction of the interest and fees accrued in 1978.

The Tax Court agreed with the Commissioner that the taxpayers were not entitled to deductions for the 1978 interest liability. The court held that the attempted waiver of interest by the Secretary rendered the interest obligations contingent and thus unavailable as deductions. The court also concluded that CRLC had contested its ultimate obligation to pay the debt and interest, and thus the taxpayers were not entitled to deduct the interest.

### B. The "All Events" Test

■ The Internal Revenue Code provides a deduction for "all interest paid or accrued within the taxable year on indebtedness." 26 U.S.C. § 163(a) (1982). The "all events" test establishes the standard for determining when an item of expense is to be regarded as "accrued" for federal taxation purposes. Under the test, an expense may be accrued in the year in which "all the events * * * occur which fix the amount of the tax and determine the liability of the taxpayer to pay it." *United States v. Anderson*, 269 U.S. 422, 441, 46 S.Ct. 131, 134, 70 L.Ed. 347 (1926).[6] Deductions are allowable when "all the events have occurred which establish the fact of the liability giving rise to such deduction," and "no accrual shall be made in any case in which all of the events have not occurred which fix the liability." Treas. Reg. §§ 1.446–1(c)(1)(ii), 1.461–1(a)(2) (1988).

■ Establishment of the "fact of liability" turns on whether the taxpayer has incurred a fixed, definite, and unconditional obligation to pay. Discussing when a liability becomes fixed and certain, the Supreme Court has stated that "'a liability does not accrue as long as it remains contingent.'" *United States v. Hughes Properties, Inc.*, 476 U.S. 593, 600, 106 S.Ct. 2092, 2096, 90 L.Ed.2d 569 (1986) (quoting *Brown v. Helvering*, 291 U.S. 193, 200, 54 S.Ct. 356, 360, 78 L.Ed. 725 (1934)). Accrual of an expense may not be predicated on the probability that a legal obligation to pay will arise at some point in the future. *See United States v. General Dynamics Corp.*, 481 U.S. 239, 243–44, 107 S.Ct. 1732, 1735–36, 95 L.Ed.2d 226 (1987). Where an accrual basis taxpayer's obligation to pay interest is contingent upon the happening of a subsequent event, the interest is not accrued until the contingent liability becomes absolute, and the deduction must be taken in the year the interest is paid. *Burlington-R.I.R.R. v. United States*, 321

United States on November 29, 1977, as well as on all fees, interest, and advances owing to the Secretary by [CRLC], from and after January 1, 1978.

6. In 1984, Congress incorporated the "all events" test into the Internal Revenue Code. Section 461 of the Code provides:

[T]he all events test is met with respect to any item if all events have occurred which determine the fact of liability and the amount of such liability can be determined with reasonable accuracy.

26 U.S.C. § 461(h)(4) (Supp.1984). This provision is generally effective for post–1983 tax years and thus has no effect on this case.

F.2d 817, 818–19 (5th Cir.1963) (citations omitted), *cert. denied,* 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed.2d 306 (1964).

■ Furthermore, when an accrual basis taxpayer contests the existence of a liability which might otherwise accrue, a deduction is not permitted because the existence of the contest renders the liability contingent. *Dixie Pine Prods. Co. v. Commissioner,* 320 U.S. 516, 519, 64 S.Ct. 364, 365, 88 L.Ed. 270 (1944). This "contested liability" rule is actually nothing more than the application of the "all events" test to a common fact pattern. *See United States v. Consolidated Edison Co.,* 366 U.S. 380, 385–86, 81 S.Ct. 1326, 1329–30, 6 L.Ed.2d 356 (1961).

## II. DISCUSSION

### A. Contingent Liability

The Tax Court held that it did not need to rule on the validity of the Secretary's waiver because the uncertainty as to its validity rendered CRLC's 1978 interest obligation contingent and thus not deductible. Although the Tax Court did not reach the validity issue, we address this point initially. The taxpayers argue that a party may not exercise rights of which it has divested itself by contract. They contend that the language of section 5.01 of the Indenture, coupled with section 5.28, divested the Secretary of the power to waive the interest, and thus her purported waiver was ineffective. The taxpayers claim that this language contracted away any statutory power which the Secretary may have had to make the purported waiver.

The Commissioner counters that the Secretary's waiver of CRLC's 1978 interest obligations was valid because she had statutory authority to pursue her claim under section 726 of the New Communities Act and under HUD regulations which allow the Secretary to amend or waive all nonconsensual terms and conditions in the Indenture. The Commissioner also contends that the waiver was valid under the complete provisions of the agreement.

The Secretary's letter of January, 1978, in which she purported to waive interest

due in 1978, began, "Under my authority and under the provisions of Section 5.28 of the Indenture of Mortgage * * *." The statement provides the Secretary with two possible bases, statutory and contractual, under which her authority to waive the interest might exist.

#### 1. Statutory Waiver Authority

■ The Secretary's statutory authority to act is derived from section 726 of the New Communities Act and the regulations promulgated by HUD under the Act. Section 726 states that "[n]otwithstanding any other provision of law, the Secretary shall also have power to pursue to final collection by way of compromise or otherwise all claims acquired by him in connection with any security, subrogation, or other rights obtained by him in administering this part." 42 U.S.C. § 4527(3) (1982). The regulations provide that the Secretary may waive or amend all

> terms and conditions in the Project Agreement, Indenture, and other Project Documents that do not specifically require the consent of all or a portion of the holders of the guaranteed debt obligations * * * as he shall deem necessary or desirable to * * * protect the security interests of the United States or to otherwise preserve his ability to carry out the purposes of the Act.

24 C.F.R. § 3720.65 (1984) (removed May 7, 1984).

We agree with the Commissioner that the phrase "by way of compromise or otherwise" in the statute manifests Congress's intent that the Secretary have broad latitude to pursue collection of a claim. Here, interest was waived in an effort to expedite foreclosure by depriving the taxpayers of their motivation to delay the proceedings. In addition, the regulations provide the Secretary with specific authority to waive any provision of the Indenture in order to protect the security interests of the federal government. Together, these provisions supply ample statutory authority for the Secretary's waiver.

The taxpayers contend that the language of the Indenture Agreement divested the

Secretary of the statutory authority to waive or modify interest obligations owed to her. We disagree. Nowhere in the Agreement does the Secretary specifically relinquish her statutory authority. Rather, the language of the Agreement reiterates, with specificity, that authority by providing for certain waiver powers.

### 2. Contractual Waiver Authority

■ The taxpayers assert that, under section 5.28 of the Indenture Agreement, the Secretary was without authority to waive the 1978 interest obligations. They contend that, under section 5.28, only sections 5.02 and 5.04 through 5.27 may be waived by the Secretary, and therefore the Secretary is precluded from waiving interest due under section 5.01. While this may be true, it is irrelevant.

Section 5.01 requires CRLC to pay principal and interest on the debentures to the debentureholders. CRLC failed to do so, and in accordance with its guarantee, NCDC cured the debenture defaults. Section 5.25 requires CRLC to pay interest on the amount of any guarantee payment made by the Secretary. Consequently, CRLC's duty to pay interest shifted from payment to the debentureholders, under section 5.01, to payment to NCDC, under section 5.25. Under the explicit language of section 5.28, section 5.25 may be waived. *See supra* note 4. Thus, the Secretary's reference to section 5.28 as authority to waive the interest due her was accurate.

### 3. Revocability of the Waiver

■ The November 4 notice of the Secretary's waiver contained the following language: "Nor are we * * * waiving the right to reinstitute prospectively on written notice to the Company the accrual of interest on all or any of the amounts owing to the Secretary by the Company." The taxpayers contend that, even if the Secretary had the authority to waive the 1978 interest obligations, this language made it revocable and thus ineffective. We agree.

Irrevocability is the essence of a waiver provision. "Where a party intentionally relinquishes a known right by waiver, he cannot, without consent of his adversary, reclaim it. A waiver, once established, is irrevocable even in the absence of any consideration therefor." *Engstrom v. Farmers & Bankers Life Ins. Co.*, 230 Minn. 308, 41 N.W.2d 422, 424 (1950) (citations omitted).

Intent is an essential element of a waiver and can be gleaned from the declarations of the parties or inferred from the facts. *Id.; Anderson v. Twin City Rapid Transit Co.*, 250 Minn. 167, 84 N.W.2d 593, 603 (1957). The language of the Secretary's waiver notice explicitly communicated her intent not to be irrevocably bound by the attempted waiver. In addition, her subsequent actions confirmed that the waiver was intended to be revocable, when in 1980 she in fact revoked the waiver and reinstated the interest due. For a waiver to be effective, the right allegedly waived must be gone beyond recall. *Twin City*, 84 N.W.2d at 603. We conclude, therefore, that the Secretary's waiver was ineffective.

The Commissioner argues that regardless of whether the waiver was legally effective, the uncertainty as to its validity during the taxable year rendered the partnership's liability contingent. We disagree. The waiver was either valid or invalid from the outset. Because we have already concluded that the Secretary's waiver was not effective, further discussion of the contingency issue is unnecessary.

### B. Contested Liability

■Although the Secretary's waiver was ineffective, a second ground exists for disallowing the taxpayers' 1978 interest deductions. It has long been established that an accrual basis taxpayer may not deduct an expense for the year in which the taxpayer has contested his or her liability for that expense. *Dixie Pine Prods.*, 320 U.S. at 519, 64 S.Ct. at 365; *Security Flour Mills Co. v. Commissioner*, 321 U.S. 281, 284, 64 S.Ct. 596, 597-98, 88 L.Ed. 725 (1944). The Treasury Regulations set forth the standard for determining whether an obligation has been contested:

A contest arises when there is a bona fide dispute as to the proper evaluation

of the law or the facts necessary to determine the existence or correctness of the amount of an asserted liability * * *. An affirmative act denying the validity or accuracy, or both, of an asserted liability to the person who is asserting such liability, * * * is sufficient to commence a contest.

Treas.Reg. § 1.461–2(b)(2) (1988).

CRLC's answer to the amended complaint in the 1980 foreclosure action admitted that CRLC had not paid the amounts in default but denied that the amounts were due and owing because CRLC was "relieved of its obligation to make such payments by virtue of the failure of [NCDC] to perform in accordance with its agreements." The Tax Court interpreted this language as an affirmative defense that CRLC was relieved of its obligation to pay the 1978 interest. The court held that the pleadings and other memoranda filed by CRLC in the foreclosure litigation constituted a contest of its 1978 interest and fees obligations, and therefore the taxpayers were not entitled to a deduction that year.

The taxpayers argue that the contest rule is not applicable here because CRLC did not dispute its 1978 interest obligation in the foreclosure proceedings, but rather, challenged only the acceleration of the principal amount and the foreclosure remedy. The taxpayers assert that the court's analysis of the foreclosure pleadings was erroneous as a matter of law because the pleadings were read out of context and the court ignored uncontroverted testimony which confirmed that the pleadings challenged only the acceleration of the principal.

We agree that CRLC did not explicitly contest its 1978 interest obligation. The Commissioner may disallow a deduction on the basis of a contest if it is established that a liability has been asserted and contested. Treas.Reg. § 1.461–2(b)(2) (1988). In the government's amended complaint in the foreclosure litigation, the 1978 interest obligation was not alleged and thus CRLC's assertion that it was relieved of its obligation to pay the principal and interest due cannot be considered an explicit con-

test of the 1978 interest. However, our analysis does not end there. The pleadings as a whole, coupled with the other relevant documents and testimony, establish CRLC's position in the foreclosure litigation. The gist of CRLC's argument was that, although CRLC had not paid the principal and interest due under the Agreement, such amounts were not due and owing at the time of the litigation because of the government's failure to file an environmental impact statement, and other defaults on the Agreement. CRLC claimed that it was relieved of its obligations to make *any* payments until the government performed its part of the Agreement. The logical extrapolation of this argument is that, if the government never performed its requisite obligations, then CRLC would never have to pay the principal and interest due. One cannot contest the principal of a debt without contesting any and all *possible* obligations that go along with that principal. Looking at the foreclosure litigation as a whole, we conclude that CRLC's position contested the underlying debt and, therefore, implicitly contested all possible consequences arising from that debt.

In addition, we note that CRLC's position in the foreclosure litigation rendered the 1978 interest obligation contingent because, at the close of 1978, that litigation was unresolved and the government had not yet cured its alleged breaches of the Agreement. Consequently, the obligation was not fixed and definite because the issue as to when, if ever, CRLC would owe the interest was unresolved.

## III. CONCLUSION

We conclude that, although the Secretary possessed statutory and contractual authority to waive the taxpayers' 1978 interest obligations, the language of the waiver displayed an intent not to be irrevocably bound by the waiver, and thus the waiver was ineffective. However, we affirm the district court because we conclude that by contesting its liability for the principal amount of $24 million, CRLC implicitly contested any possible interest obligation which may arise in the future, rendering

the 1978 interest obligation contingent. Thus, the "all events" test was not satisfied, and the taxpayers' interest deductions were properly disallowed.