**ALBANY & NORTHERN RY. CO. v. ALLEN, Collector of Internal Revenue.**

**Civ. A. No. 526.**

United States District Court
M. D. Georgia, Macon Division.

June 23, 1949.

J. O. Gibson, Waldo Deloache, Moultrie, Georgia, for plaintiff.

John P. Cowart, United States Attorney, Macon, Ga., T. Reese Watkins, Asst. U. S. Attorney, Macon, Ga., Fred J. Neuland, Sp. Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, Sp. Asst. to the Atty. Gen., on the brief), for defendant.

DAVIS, District Judge.

The above stated cause was submitted to the Court upon a stipulation of facts, which the Court finds to be true; and from this stipulation and the documentary evidence introduced, the Court finds the material facts to be, as follows:

The Albany & Northern Railway Company, hereinafter referred to as the taxpayer, was organized on September 12, 1895, under the laws of Georgia, to run for 101 years with an authorized capital stock of $350,000, represented by 3500 shares of common stock having a par value of $100.00 per share. It was organized by Henry P. Talmadge of New York, N. Y. and T. Edward Hambleton, of Baltimore, Md. Property which they had purchased at a foreclosure sale of the Albany, Florida & Northern Railway Company was transferred to the taxpayer company in exchange for all of its stock and $400,000 of its first mortgage bonds, bearing interest at the rate of five per cent per annum. These bonds included $50,000 in preference bonds and $350,000 in non-preference bonds, which were executed and to be performed in the State of Maryland, and they were to mature fifty years from date of issue.

In 1906, the Georgia, Southwestern & Gulf Railroad Company, hereinafter referred to as the Gulf Company, executed to the Carnegie Trust Company a mortgage or deed of trust to secure an issue of its mortgage bonds. This trust indenture did not purport to convey any properties of the taxpayer company.

In January, 1910, the Gulf Company agreed to purchase from Talmadge and Hambleton all of the capital stock and $383,000 of the bonds of the taxpayer company, as well as any of the other outstanding bonds which could be obtained at par.

The sale of the stock was consummated but in 1911 the parties agreed to a recission of the agreement for the sale of the bonds.

From 1910 to 1929, the Gulf Company operated the lines of the taxpayer company and carried its property on its (the Gulf's) own books. The taxpayer company had no books of its own and filed no reports. In 1929, however, the Interstate Commerce Commission ordered the property, equipment and bonds of the taxpayer company purged from the books of the Gulf Company. Since that time all assets and liabilities of the taxpayer company have been carried on the books and reports of the taxpayer. In 1929, the taxpayer re-commenced filing annual reports with the Interstate Commerce Commission, and has continued to do so.

Beginning in 1937, by order of the Interstate Commerce Commission, and continuing throughout the receivership of the Gulf Company, the accrued interest on the bonds of the taxpayer company was treated by the Gulf Company as rental for leased roads, and was carried on the books of the taxpayer as rental income from leased roads, and also as a charge for interest on funded debt.

After acquiring the stock of the taxpayer company, the Gulf Company assigned and deposited it with the trustee named in its

mortgage trust indenture of 1906 as additional collateral to secure its bonds.

On or about January 1, 1933 receivership proceedings were commenced against the Gulf Company and the taxpayer company was included as a party defendant, so as to bind said taxpayer by all judgments and decrees in the proceedings, as to any claim it might have against the Gulf Company. But it should be noted that neither the taxpayer company, nor any of its properties, were ever placed in receivership, though its stock, which was an asset of the Gulf Company was subject to said proceedings. On March 6, 1942, said proceedings were terminated by an order of sale of all the assets of the Gulf Company, excluding all assets of the taxpayer company. This order was promulgated by the Superior Court, Albany Judicial Circuit, where the receivership proceedings were had.

In October, 1941, the bonds of the taxpayer company, except for $68,000 which are still in the hands of other persons, were bought from George Shriver, Baltimore, Md. The bonds were purchased by the following persons in the amounts stated:

Preference Bonds
| | | |
|---|---|---|
| Michel DeLoache | $22,500. | |
| Margaret T. Pidcock | 22,500. | |
| J. R. Hackett, Jr. | 5,000. | $50,000. |

Non-Preference Bonds
| | | |
|---|---|---|
| Margaret T. Pidcock | $127,500. | |
| J. R. Hackett, Jr. | 27,000. | |
| Waldo DeLoache, Clyde K. DeLoache and L. D. Dubberly, Trustee | 127,500 | $282,000. |

On the 25th of March, 1942, as a part of the Gulf Company receivership proceedings, the stock of the taxpayer company, all of which was owned by the Gulf Company, was sold for $300.00 to Waldo DeLoache, C. W. Pidcock, and J. R. Hackett, Jr., by the receiver, in accordance with an order of the Judge of the Superior Court having jurisdiction. Said order further directed the taxpayer company to transfer such stock on its books in accordance with the directions of the purchaser thereof. During the tax year here involved, said stock stood on the books of the taxpayer as follows:

| | |
|---|---|
| Waldo DeLoache | 157,500 shares |
| Margaret T. Pidcock | 147,500 " |
| C. W. Pidcock | 10,000 " |
| J. R. Hackett, Jr. | 35,000 " |
| | 350,000 shares |

Thus, no bondholder owned 50% of the stock of the taxpayer company.

In 1942, the taxpayer company resumed operations. In 1943, the taxpayer company claimed a tax deduction for accrued interest on the bonds here involved in the amount of $20,000. No interest had been paid since January, 1933, on either class of the taxpayer's first mortgage bonds, except $21,562.50 accrued interest on the preference bonds, which was paid by the receiver in April, 1942, and $11,225.00 paid by the taxpayer as accrued interest on said preference bonds in December, 1942.

At the termination of the receivership proceeding in March, 1942, the total unpaid accrued interest on the taxpayer company's bonds, according to the receiver's books, amounted to $175,000. During the fiscal years ending June 30, 1944 and June 30, 1945, the taxpayer company paid $2,375.00 and $2,010.67 respectively, on account of accrued interest existing as of June 30, 1942.

For the tax year here involved, which is the fiscal year ending June 30, 1943, the taxpayer company operated on an accrual basis and filed its return on such basis. The claimed deduction of $20,000. represents 5 per cent. of $400,000. or the amount of interest accruing on the bonds in one year. The taxpayer company also claimed a deduction for interest on the unpaid accrued interest at the rate of 7 per cent., which amounted to $12,950.

The Commissioner disallowed the deductions claimed by the taxpayer who paid the deficiency assessed and filed a timely claim for refund. More than six months having elapsed without action by the Commissioner, the taxpayer filed this suit.

The relationship between the parties in this case is of no tax significance and the several stockholders are neither partners or joint adventurers.

The bonds involved in this case have never been paid or forgiven.

In view of the foregoing, the Court has reached the following conclusions:

1. This Court has jurisdiction of the parties and the subject-matter.

2. During the tax year in question, the bonds of the Albany & Northern Railway Company were subsisting obligations of the taxpayer company and five per cent. interest was properly accruable and deductible.

3. The taxpayer company is entitled to a further deduction for interest on interest at the rate of six per cent. consonant with the laws of Maryland.

4. The provisions of Section 24 (c), Internal Revenue Code, 26 U.S.C.A. § 24(c), are not applicable under the facts of this case.

The foregoing is to be taken as the Court's Findings of Fact and Conclusions of Law.

The Plaintiff is entitled to recover in accordance with the foregoing findings of fact and conclusions and may present a judgment in accordance therewith.