**BURLINGTON–ROCK ISLAND RAILROAD COMPANY, a corporation,**
**Plaintiff,**

**v.**

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 13371.**

United States District Court
S. D. Texas,
Houston Division.

Jan. 4, 1962.

Andrews, Kurth, Campbell & Jones, Houston, Tex., F. B. Walker and Rice M. Tilley, Fort Worth, Tex., and Joseph M Jones, Washington, D. C., for plaintiff.

Woodrow Seals, U. S. Atty., Houston, Tex., Louis F. Oberdorfer, Asst. Atty. Gen., and Jerry Hamovit, Special Asst. Atty. Gen., for defendant.

INGRAHAM, District Judge.

Plaintiff taxpayer, Burlington-Rock Island Railroad Company, seeks to recover from the United States the sum of $242,968.50, with interest. This sum represents income tax, plus deficiency interest thereon, collected from plaintiff by the Commissioner of Internal Revenue in satisfaction of plaintiff's asserted income tax liability for the calendar year 1954.

Plaintiff seeks to establish its right to recovery on the grounds that, as an accrual basis taxpayer, it had accrued interest on outstanding indebtedness during 1954 which more than offset any income it received. The defendant answers that, for tax purposes, the plaintiff had no definite and fixed obligation to pay interest arising in 1954 with which to offset its income. The only question for decision thus resolves itself to whether there was a definite, fixed and existing obligation accruable during the tax year in point. Speaking to this question, the taxpayer contends that there was, and that any uncertainty or contingency related not to the existence but to the performance, i. e., payment, of the obligation; while the government contends that the uncertainty or contingency related to the very essence of the obligation to pay.

A brief review of the financial history of the plaintiff corporation, as stated in the stipulation, is significant to a full understanding of this controversy.

Plaintiff is a Texas corporation established in 1902 under the name of Trinity and Brazos Valley Railroad Company, to provide rail service between certain points in Texas. To facilitate construction, plaintiff issued First Mortgage Bonds in the face amount of $8,760,000, which were acquired and are still held in equal amounts by the Colorado and Southern Railway Company, and the Chicago, Rock Island & Pacific Railroad Company. In 1905 and 1906, all of the outstanding capital stock of plaintiff was acquired in equal amounts by the aforementioned Colorado and Southern, and the Chicago, Rock Island.

In 1914 a receiver was appointed as a result of a creditor suit brought by the C & S and the Rock Island, which receivership was not terminated until 1931. During the course of the receivership, Receiver Certificates were executed totalling $1,632,469.71, of which there remained unpaid in 1931, Certificates in the principal amount of $1,489,954.40. All accumulated interest on these Certificates was forgiven by the creditors as a part of the cancellation of indebtedness of $11,641,785.89, made in 1931 to expedite the termination of the receivership. All of the Receiver Certificates were owned in equal amount by the C & S and the Rock Island. Contemporaneous with the termination of the receivership, plaintiff adopted the corporate name of Burlington-Rock Island Railroad Company.

On July 9, 1946, the shareholder-creditors each obtained a judgment against plaintiff in the United States District Court for the Southern District of Texas, Houston Division, in the amount of $9,829,922.33, for a total of $19,659,844.66, which represented the unpaid principal of $10,249,954.00 and unpaid interest accrued thereon of $9,409,890.26. Through judgment, this total was thus subjected to the incurrence of 6% statutory interest per year. Art. 5072, Vernon's Texas Civil Statutes.

Between July 9, 1946, and June 1, 1950, plaintiff tendered payment on the judgment to its shareholder-creditors in the amount of $2,500.

During 1950 plaintiff ceased to be an operating railroad and leased its property jointly to the Fort Worth & Denver City Railway Company and the Chicago, Rock Island, and Pacific Railroad Company at an annual rental of $375,000, plus additional rental aggregating $89,059 for 1954, computed under a formula

to cover allowable depreciation charges, overhead expenses, and all taxes other than federal income taxes, all of which was approved by the Interstate Commerce Commission.

On June 1, 1950 plaintiff entered into an agreement with its shareholder-creditors providing for priority and allocation of payments on the judgments obtained in 1946. Between the date of the agreement and December 1954, plaintiff paid $1,153,761.87 to its creditors. As of December 31, 1954, the unpaid balance on the judgments was $18,503,582.79, exclusive of statutory interest.

During the 1954 tax period, plaintiff operated on the calendar year basis and maintained its books and filed its tax returns on the accrual method. In its 1954 return, plaintiff reported gross income as $471,888.63, consisting of $464,059, the aggregate rental income, plus $7,829.63, representing royalties on certain oil and gas leases which were the plaintiff's only other source of income. As an offset to this income, plaintiff accrued on its books and sought to deduct in its income tax return, $1,119,716.38, as interest at the rate of 6% per annum on the balance due on the judgments.

Against this background, it is now necessary to determine whether 26 U.S.C. 1958 ed., § 163(a), providing that "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness", anticipates a deduction such as plaintiff sought to take in 1954. This depends upon the proper scope to be given the concept of accrual for tax purposes.

█ The intendment of Sec. 163(a) of the Code, as delineated in the cases, is that interest on indebtedness is deductible in the year of accrual whether paid or not, if it represents a fixed, definite and existing obligation. Natco Corporation v. United States, 240 F.2d 398 (3rd Cir.1956); Albany & Northern Railway Company v. Allen, 84 F.Supp. 666 (D.C.M.D.Ga.1949). So long as the obligation itself is demonstrably bona fide, present inability to pay or the unlikelihood of ultimate payment as an outgrowth of the economic vicissitudes of doing business, in and of itself, will not prevent the debtor from claiming a tax deduction for the year in which the debt becomes certain. Keebey's, Inc. v. Paschal, 188 F.2d 113 (8th Cir.1951); Zimmerman Steel Company v. Commissioner, 130 F.2d 1011, 143 A.L.R. 1054 (8th Cir. 1942); Panhandle Refining Company v. Commissioner, 45 B.T.A. 651 (1941). But if the liability to pay the obligation is wholly contingent upon the happening of a subsequent event, the obligation cannot be regarded as incurred or deductible as accrued until the year in which by the occurrence of the event the contingent liability becomes an absolute one. Pierce Estates, Inc. v. Commissioner, 195 F.2d 475, 477 (3rd Cir. 1952). See also Gounares Bros. & Co. v. United States, 292 F.2d 79 (5th Cir. 1961); Guardian Investment Corporation v. Phinney, 253 F.2d 326 (5th Cir. 1958); Prudence Securities Corporation v. Commissioner, 135 F.2d 340 (2d Cir. 1943).

█ Applying the above principles to the case at hand, it is the opinion of this court that the instant facts reflect such a panoply of contingencies surrounding the obligation to pay statutory interest arising in 1954, that the essence of the obligation is impeached for purposes of present deductibility.

Aside from whatever significance might be attached to the history of taxpayer's relationship to its shareholder-creditors, including the absolution of outstanding interest liability of more than $11,000,000 in 1931, and the fact that with one minor exception discussed below, taxpayer has never made any payments on interest throughout the entire period of its corporate existence, the Allocation Agreement of June 1, 1950, affords the primary basis for the conclusion that plaintiff was not entitled to deduct interest arising in 1954.

█ There is no dispute that the 1946 judgments represent definite and fixed

liabilities. Had these judgments not been altered in their effect by the Allocation Agreement, the interest would, in all likelihood, be accruable as it arose from year to year. This follows from the fact that in Texas, in the absence of proof of a different intention, payments upon an instrument evidencing an indebtedness are first applied to extinguishment of the interest. See J. I. Case Co. v. Laubhan, 64 S.W.2d 1079 (Tex.Civ.App.1933); 25 Tex.Jur. 25. Thus, there would be no condition precedent to the application of plaintiff's payments to its shareholder-creditors to the statutory interest obligation; and indeed, in the absence of evidence indicating a contrary intention, this must be deemed to be the disposition of the $2,500 paid by plaintiff between the date of the judgment and the inception of the Allocation Agreement. But the Allocation Agreement altered this scheme by raising a number of contingencies vis-a-vis the obligation to pay statutory interest on the judgment.

In the first instance, payments on principal *or* interest are to be made by the plaintiff under the Agreement only "from time to time insofar as its cash situation will reasonably permit." (Ex. C, par. 1). This demonstrates not only an absence of any fixed or determinable dates on which payments of unspecified amounts are to be made, but also an absence of any fixed duty to ever make payments unless the stated conditions are present.

But before the plaintiff can ever arrive at an undetermined date in the future where it can look to its cash situation to determine if interest payments on the judgments are possible, three other substantial conditions must be satisfied: (1) the principal amount of the Receiver Certificates, aggregating $336,192.53 in 1954, must have been paid in full; (2) the principal amount of the First Mortgage Bonds, aggregating $8,760,000 in 1954, must have been paid in full; and (3) that part of the 1946 judgment representing interest, aggregating $9,407,390.26 in 1954, must have been paid in full. (Ex. C, par. 3).

As previously stated, the taxpayer argues that these contingencies relate to the time with certainty of payment, and not to the liability for payment. It is obvious that they relate to both of these considerations. Although the time for payment of statutory interest is specified in relation to other payments, it is also clear from the agreement that the liability for payment is modified—no payment for interest being allowed unless all other segments of the obligation have been satisfied in the pre-arranged order, and only then if the plaintiff's cash situation reasonably permits.

There is ample case authority to support this court's interpretation of the significance to be given the Allocation Agreement. In Pierce Estates, Inc. v. Commissioner, supra, 195 F.2d at 477–78, it was held that:

"Because interest is compensation for the use or forbearance of money it ordinarily accrues as an item of expense from day to day even though its payment may be deferred until a later date. But this is not true if the payment is not merely deferred but the obligation to pay at all is wholly contingent upon the happening of a later event as, for example, the subsequent earning of profits. In the latter case, the interest may not be regarded as an accrued expense until the year in which, by the earning of the profits, the contingency is satisfied and the obligation to pay becomes fixed and absolute."

In the Pierce case, interest on debenture notes was held too contingent to accrue for purposes of deduction where it was payable only from the net income of the company as ascertained and declared by the board of directors. This parallels the proviso in the Allocation Agreement in the instant case where payments are required only when and insofar as plaintiff's cash situation will reasonably permit, with no evidence to suggest that the plaintiff is other than the sole arbiter of when that time will

arrive. The path leading to payment in the instant case is considerably more tortuous than in Pierce, since plaintiff's cash situation must reasonably permit payment in full of all the Receiver Certificates, First Mortgage Bonds, and interest incorporated in the judgment, before the threshold of statutory interest can ever be reached. In this same regard, Gounares Bros & Co. v. United States, supra, is pertinent. In that case, the taxpayer owed a debt to its stockholder, with the understanding that the stockholder-creditor was to be repaid if and when, but only when, taxpayer had earnings. There, the taxpayer was not allowed to accrue and deduct interest on the obligation until the year when it had actual earnings.

In Guardian Investment Corporation v. Phinney, supra, the Fifth Circuit held that where a taxpayer had executed second mortgage notes bearing no maturity date and providing that no payments of either principal or interest should be due until first mortgage indebtedness had been paid out of proceeds from the sale of the mortgaged property, the taxpayer's liability was contingent, and he could take no tax deduction for accrued interest. There, the court found the following elements of contingency:

> "(1) There is no fixed or determinable date of maturity. (2) The principal and interest are *owed* and payable only on the happening of a condition: the prior payment of the first mortgage. (3) The happening of the condition is uncertain. (4) It is a future condition, the occurrence of which did not take place within the taxable years in question. (5) There is no fixed or determinable liability on the taxpayer's part or, indeed, any necessary liability; if the proceeds from the sale of the mortgaged property are not sufficient to pay off the first mortgage, the taxpayer is not under any obligation to pay any interest or principal of the second mortgage." 253 F.2d at 331.

In the instant case, there are no fixed or determinable dates or amounts of payments; the interest is owed and payable only on the satisfaction of a series of conditions precedent; these conditions are uncertain of satisfaction, etc. In Prudence Securities Corporation v. Commissioner, supra, the taxpayer corporation was not allowed to deduct accrued interest on Series B bonds held by its sole stockholder, where the interest was not to be paid until all the principal and interest on the Series A bonds had been paid or provided for, and there had been a completed event of default. The court concluded that "the contingencies, both in form and substance, affecting the future payment of the interest on the B bonds were such that in the taxable year no reasonable person could assume that payment would ever be likely to occur." 135 F.2d at 341.

Aside from the contingencies affecting liability apparent on the face of the Agreement, the total plan reflects such an uncertainty of payment as to undermine the basic liability. This is not a debt of several thousands or even hundreds of thousands of dollars owed by a going concern, payment of which is jeopardized only by the uncertainties and hardships appertaining to all business ventures. Here, in effect, the creditors, who are also the owners of the taxpayer, have pensioned it off to a waning life of holding assets. The antecedents of at least part of this debt reach back to the early years of the twentieth century. To arrive at payment on that part of the debt attributable to 1954 statutory interest, assuming it is paid off at the rate followed prior to 1954, would carry these parties into the middle of the twenty-first century, and to completely absolve the debt, inclusive of interest which continues to attach to that part of the judgment yet unpaid, will extend the matter well into the twenty-second century. Surely, this gives substance to the statement in Guardian Investment Corporation v. Phinney, supra, at 253 F.2d 330, that "uncertainty of payment may ex-

tend beyond ordinary business risk and reach a point where it destroys the existence of a debt for tax deductibility."

Counsel will draft and submit judgment for the defendant.