**BURLINGTON–ROCK ISLAND RAIL-
ROAD COMPANY, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 19700.

United States Court of Appeals
Fifth Circuit.

Aug. 27, 1963.

Milton H. West, Jr., Houston, Tex.,
Rice M. Tilley, Fort Worth, Tex., An-
drews, Kurth, Campbell & Jones, Hous-
ton, Tex., for appellant, Eaton Adams,
Chicago, Ill., F. B. Walker, Fort Worth,
Tex., of counsel.

C. Guy Tadlock, Lee A. Jackson,
Michael K. Cavanaugh, Harry Baum,
Attys., Dept. of Justice, Washington, D.
C., Woodrow B. Seals, U. S. Atty., Hous-
ton, Tex., Louis F. Oberdorfer, Asst.
Atty. Gen., John H. Baumgarten, Asst.
U. S. Atty., for appellee.

Before HUTCHESON, WISDOM and
GEWIN, Circuit Judges.

WISDOM, Circuit Judge.

This appeal is from the district court's
judgment denying plaintiff's claim for an
income tax refund. (S.D.Tex.1961), 200
F.Supp. 681.

The question for decision is whether
the taxpayer, filing its returns on the
calendar year, on an accrual basis, had
a fixed and unconditional obligation in
the taxable year 1954 to pay interest
claimed as a deduction in that year. We

affirm the district court's holding that the obligation was not fixed and unconditional in 1954, and that therefore the taxpayer was not entitled to accrue and deduct the interest claimed in that year.

The facts are stipulated.

Burlington-Rock Island Railroad Company, the taxpayer, shortly after its incorporation in Texas in 1902, issued first mortgage bonds in the amount of $8,760,000. Two companies, the Colorado and Southern Railway Company and the Chicago, Rock Island and Pacific Railroad Co., purchased and still hold all of the taxpayer's first mortgage bonds and all of the taxpayer's stock. In 1914, the taxpayer went into receivership as a result of a creditor's suit by Southern and Rock Island. The receivership was not terminated until 1931. During the course of the receivership Receiver Certificates, totalling $1,489,954.40, were issued in equal shares to the two creditor-stockholders. These creditors then forgave all accumulated interest on the certificates, then amounting to $11,641,785.89. Southern and Rock Island owned all of the Receiver Certificates, which in 1931 amounted to $1,489,954.

In 1946, at the suit of Southern and Rock Island, a federal district court in Texas rendered judgment in favor of the creditors and against the taxpayer for $19,659,844.66. Of this sum, $10,249,954 represented the unpaid principal of the bonds and certificates, and $9,409,890.26 the unpaid interest which had accrued thereon. By statute, the judgment bore interest at the rate of six percent per annum. Vernon's Texas Civil Statutes, Art. 5072.

Between the date of judgment and June 1, 1950, appellant paid $2,500 on the judgment, which was credited against the statutory interest then owing. In that year the taxpayer leased its lines to a subsidiary of Southern and to the Rock Island for an annual rental of $375,000, plus additional charges covering depreciation, overhead, and certain taxes other than federal income taxes. The taxpayer also entered into an Allocation Agreement with its two stockholder creditors. This agreement provided that the taxpayer would make payments on the judgments "from time to time, insofar as its cash situation will reasonably permit." Any sums so paid were to be credited first against the principal amount, $1,489,954.40, of the receiver certificates, then against the principal amount of the first mortgage bonds—$8,760,000, next against the unpaid interest on these two securities—$9,409,890.26; and finally against the statutory interest which was accruing on the judgment. The agreement was terminable on thirty days' notice by either party. Between 1950 and 1954 appellant paid $1,153,761.87 to its two creditors under this agreement.

In 1954, the tax year in question, Burlington realized a gross income of $471,888.63. It offset this entirely, however, by accruing an interest deduction of $1,119,716.38, representing the statutory interest of six percent on the unpaid balance of the judgment. This interest was not paid to the taxpayer's stockholder-creditors. The Commissioner disallowed this deduction and assessed a deficiency, which Burlington paid. Burlington's claim for refund was rejected and it then brought this suit. From an adverse ruling by the district court, taxpayer prosecutes this appeal.

I.

Neither party seriously disputes the basic principles of tax accounting applicable in this case. Section 163 of the Internal Revenue Code of 1954 authorizes a deduction for "interest paid or accrued within the taxable year on indebtedness." Section 461, which relates to the period for which a deduction shall be taken, provides that the "deduction * * * shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income." Burlington is an accrual basis taxpayer and is required to take its interest deductions annually if it has a fixed liability for the interest; if its obligation is contingent, a deduction is taken in the year of payment. See Miller & Vidor Lumber Co. v.

Commissioner, 5th Cir. 1930, 39 F.2d 890, cert. denied Miller & Vidor Lumber Co. v. Burnet, 282 U.S. 864, 51 S.Ct. 36, 75 L.Ed. 764 (1930). The Third Circuit has summarized these principles as follows:

> "In the case of a taxpayer on the accrual basis of accounting an item of expense is to be regarded as incurred, and hence deductible as accrued, only in the year when the taxpayer's liability to pay it becomes definite and absolute, whether or not it is presently paid or payable. On the other hand if the liability to pay the item of expense is wholly contingent upon the happening of a subsequent event the item cannot be regarded as incurred or deductible as accrued until the year in which by the occurrence of the event the contingent liability becomes an absolute one. Because interest is compensation for the use or forbearance of money it ordinarily accrues as an item of expense from day to day even though its payment may be deferred until a later date. But this is not true if the payment is not merely deferred but the obligation to pay at all is wholly contingent upon the happening of a later event as, for example, the subsequent earning of profits. In the latter case, the interest may not be regarded as an accrued expense until the year in which, by the earning of the profits, the contingency is satisfied and the obligation to pay becomes fixed and absolute." Pierce Estates, Inc. v. Commissioner, 3d Cir. 1952, 195 F.2d 475, 477–478.

Burlington's primary argument is that in attempting to apply these principles, the district judge disregarded the distinction between a legal condition to liability for interest and the economic improbability of its ever being paid. See Guardian Investment Corporation v. Phinney, 5 Cir. 1958, 253 F.2d 326. It urges that while, under the decisions of this court, a taxpayer cannot, if the contingency has not yet occurred, accrue interest which is not legally due until the occurrence of a contingency, it can accrue and deduct interest which it is legally obligated to pay, even if financially unable to pay it. Burlington contends that it was under a legal obligation to pay the statutory interest on the judgment and was, therefore, entitled to deduct it even though no payments were applied against this interest in 1954, or, under the present rate of payments under the Allocation Agreement, could be at any foreseeable time.

The distinction which Burlington seeks to draw was rejected in the Second Circuit when the interest was owed by a wholly owned subsidiary to its parent and where no reasonable person could assume that the payment would ever be made. Prudence Securities Corp. v. Commissioner, 2d Cir. 1943, 135 F.2d 340. Burlington's argument, however, finds support in some decisions which carry accrual about as far as it can go. The Eighth Circuit has held that

> "[W]here interest actually accrues on a debt of a taxpayer in a tax year the statute plainly says he may deduct it. That he has no intention or expectation of paying it, but must go into bankruptcy as this taxpayer was obliged to do, can not of itself justify denial of deduction in computing the taxpayer's net income. It is true that if a man's gains at the end of the year consist of bad debts he can have no net income to tax. But neither does he have such net income if the interest on what he owes amounts to more than his gains." Zimmerman Steel Co. v. Commissioner, 8th Cir. 1942, 130 F.2d 1011, 143 A.L.R. 1054.

Similarly, we stated in Fahs v. Martin, 5th Cir. 1955, 224 F.2d 387, 395, that "interest on an unconditional legal obligation is deductible for income tax purposes by an accrual basis taxpayer, notwithstanding the improbability of its being paid." It is true that here the district judge did comment that "the total plan reflects such an uncertainty of payment as to undermine the basic lia-

bility," citing Guardian Investment Corp. v. Phinney, 5th Cir. 1958, 253 F. 2d 326, but he clearly stated in his opinion that:

"[T]he only question for decision thus resolves itself to whether there was a definite, fixed and existing obligation accruable during the tax year in point. * * * The intendment of Sec. 163(a) of the Code, as delineated in the cases, is that interest on indebtedness is deductible in the year of accrual whether paid or not, if it represents a fixed, definite and existing obligation. [Citations omitted] So long as the obligation itself is demonstrably bona fide, present inability to pay or the unlikelihood of ultimate payment as an outgrowth of the economic vicissitudes of doing business, in and of itself, will not prevent the debtor from claiming a tax deduction for the year in which the debt becomes certain. [Citations omitted] But if the liability to pay the obligation is wholly contingent upon the happening of a subsequent event, the obligation cannot be regarded as incurred or deductible as accrued until the year in which by the occurrence of the event the contingent liability becomes an absolute one." Burlington-Rock Island R.R. v. United States, S.D.Tex.1962, 200 F.Supp. 681.

The district judge's denial of the interest deduction was thus based primarily upon the contingent nature of the obligation to pay interest, for he found that it was "owed and payable only on the satisfaction of a series of conditions precedent."

## II.

Burlington denies that it is not under a present legal duty to pay the statutory interest. It argues that the Allocation Agreement merely subordinated the obligation to pay the six percent statutory interest to the obligation to pay the principal and previously accrued interest represented by the judgment. This arrangement was so tenuous that it could have been terminated by the creditors on thirty days' notice, or, Burlington suggests, the creditors could have sued on the judgment even while the agreement continued in force.

This argument, we believe, overlooks the true nature and purpose of the Allocation Agreement. It seems, basically, to be an executory accord. The rule governing such agreements has been summarized as follows:

A composition with creditors in an agreement between a debtor and two or more of his creditors * * whereby the creditors agree to accept in full satisfaction something different from or less than that which they originally claim. * * It is most commonly a bilateral contract whereby the debtor promises to render the substituted performance and the creditors promise to receive it in full satisfaction. Such a composition agreement is an accord executory, resulting in a satisfaction and discharge of the original claims only when the new performance is rendered. After it is made, however, unless the contrary is clearly agreed on, it operates as a suspension of the original claims as long as the debtor has committed no material breach of it. It is an enforceable contract, so that either the debtor or the creditors can maintain action thereon in case of breach by the other party. 6 Corbin, Contracts § 1283, pp. 141–43 (1962 Rev.).

Here, Burlington's two stockholder-creditors agreed to accept in satisfaction of their judgment the taxpayer's performance of the conditional promise contained in the Allocation Agreements. Such an accord is an enforceable contract under Texas law. Alexander v. Handley, 1941, 136 Tex. 110, 146 S.W.2d 740; Worth Petroleum Co. v. Callihan, Tex.Civ.App.1935, 82 S. W.2d 1060; Rivers v. Campbell, 1908, 51 Tex.Civ.App. 103, 111 S.W. 190; Ward, Murray & Co. v. Young, 1905, 40 Tex.Civ.App. 294, 89 S.W. 456; 1 Tex.

Jur.2d, Accord and Satisfaction, §§ 3, 41; cf., Comment, The Requirement of Consideration of the Discharge of Contractual Obligations in Texas, 33 Texas L.Rev. 225 (1954). As such, regardless of the right in the creditors to terminate the agreement upon thirty days' notice, this was the contract under which the parties actually operated for four years and which conditioned the taxpayer's obligation to pay the interest here in question.

■■ Under the terms of the Allocation Agreement, Burlington was required to make payments "from time to time, insofar as its cash situation will reasonably permit." Such a contract under Texas law would impose merely a conditional obligation on the debtor to pay, and he would be under no legal duty to make payments unless his financial situation permitted it. Thus a creditor could enforce such an obligation only by showing that the promissor has sufficient funds to make payment. See Brickley v. Finley, Tex.Civ.App.1940, 143 S.W. 2d 433; Wright v. Farmer's Nat. Bank, 1903, 31 Tex.Civ.App. 406, 72 S.W. 103, and the cases cited therein. Cf., Worth Petroleum Co. v. Callihan, Tex.Civ.App. 1935, 82 S.W.2d 1060. Burlington's duty to pay the statutory interest was thus contingent upon its financial situation, and no legal obligation could arise under the agreement until the occurrence of that contingency.

This case is distinguishable from Keebey's, Inc. v. Paschal, 8th Cir. 1951, 188 F.2d 113. There payment of one creditor's notes had been postponed until all other obligations of the debtor had been met, but the legal duty for payment of the note was not dependent upon the debtor's ability to pay. In holding that the debtor should have accrued interest deductions on this note annually, instead of taking a deduction for the entire interest in the year in which it was paid, the Court stated:

"The parties to the written contract construed it to mean simply that the payment of the Keebey

notes was to be postponed until appellant's other obligations were paid. The obligation to pay was a continuing one and apparently there was reasonable ground to believe that it would ultimately be paid. The liability was fixed and certain and this liability we think was not altered by the agreement between the creditors to postpone the time of payment. The right to deduct the sums as interest became absolute in the year when accrued even though actual payment was not made until 1942." 188 F.2d at 115.

The contract here in question does more than merely subordinate payment of statutory interest to payment of the principal and accrued interest represented by the judgment, for payment of any of the obligations is made contingent upon Burlington's ability to pay. This contingency clause thus brings the Allocation Agreement much closer in substance to the contract involved in Pierce Estates v. Commissioner, 3rd Cir. 1952, 195 F.2d 475, than to the purely subordination agreement construed in Keebey. In Pierce the taxpayer was obligated to pay interest only from its net income "as ascertained and declared by its board of directors," that is, only when income permitted. The Court ruled that the taxpayer had properly deducted its interest in the year of payment rather than accruing it, for its legal duty to pay interest was wholly contingent upon the action of its directors. Similarly, in Gounares Bros. & Co. v. United States, 5th Cir. 1961, 292 F.2d 79, where interest was due only as actual earning permitted, the deduction for interest was held to have been rightfully taken in the year when interest was actually paid. As the rule has been stated in Mertens, "where the obligation to pay interest is not absolute but is wholly contingent upon the earning of income out of which alone it is payable, the interest accrues when there are earnings available for its payment." 2 Mertens, Law of Federal Income Taxation § 12.95 (1961 Rev.). See

also Guardian Investment Corp. v. Phinney, 5th Cir. 1958, 253 F.2d 326; Carlisle Tire & Rubber Co. v. Commissioner, 3rd Cir. 1948, 168 F.2d 816; Prudence Securities Corp. v. Commissioner, 2d Cir., 1943, 135 F.2d 340. Cf., United States v. Virgin, 5th Cir. 1956, 230 F.2d 880. Under these decisions, the taxpayer has no right to deduct interest which, under its Allocation Agreement, it is not now liable to pay.

## III.

The taxpayer has made a final highly ingenious argument analogizing the Allocation Agreement, insofar as it refers to the statutory interest, to a demand note payable thirty days after notice. Since, under Texas law, any payments on the judgment, absent the Allocation Agreement, would be allocable first to the statutory interest, these interest payments would become due and payable thirty days after termination of the agreement. A note, payable thirty days after demand is payable at a "determinable future time" for purposes of negotiability; therefore, argues the taxpayer, there is surely sufficient certainty of liability to justify accrual for income tax purposes.

Unfortunately for the efficacy of this line of reasoning, however, certainty of time of payment for purposes of negotiability is not necessarily the same thing as certainty of liability for income tax purposes. "As long as there is a question as to whether interest will be payable and what the rate will be, there can be no accrual. When interest is payable only on the happening of a contingency it cannot be accrued in a year when the contingency has not occurred." 2 Mertens, Law of Federal Income Taxation § 12.95 (1961 Rev.), and see cases cited therein. Even with the construction of the contract here urged by the taxpayer, the obligation to pay interest is contingent upon a termination of the agreement by the creditors. If the creditors, who were also the debtor's sole stockholders, took no steps to exercise their rights of cancellation, the obligation to pay inter-

est would continue to be governed by the Allocation Agreement, which made it, in effect, contingent upon earnings. Thus, Burlington's argument merely adds a second, alternative contingency to the one contained in the body of the contract. Since no termination did in fact take place during the tax year in question, no interest deduction was properly accruable.

The Judgment of the court below is affirmed.