In re SOUTHWESTERN STATES
MARKETING CORPORATION,
Debtor.

Walter C. KELLOGG, Trustee of the Es-
tate of Southwestern States Market-
ing Corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 788–70283–RCM–7.
Civ. No. 3:94–CV–0549–H.

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 5, 1994.

David R. Snodgrass, Gardere & Wynne, Dallas, TX, for plaintiff.

Neena Wiora, U.S. Dept. of Energy, Tax Div., Dallas, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are the Brief of Appellant Walter Kellogg, filed June 3, 1994; the Brief of Appellee, filed July 5, 1994; and Reply Brief of Appellant, filed July 15, 1994.

## I. BACKGROUND

This is a suit for a tax refund in the amount of $11,079,182 allegedly due Southwestern States Marketing Corporation ("SWSM" or "Debtor") for the taxable year ending November 30, 1991. Walter Kellogg, Trustee of the Estate of SWSM, appeals from the January 13, 1994 Amended Memorandum Opinion of the bankruptcy court, denying the relief sought in the Trustee's Complaint to Compel the Turnover of Funds, and granting the government's Motion for Summary Judgment.

This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a). The Court will set aside findings of fact only if they are clearly erroneous, but reviews conclusions of law *de novo*. *Matter of Allison*, 960 F.2d 481, 483 (5th Cir.1992).

The material facts as found by the bankruptcy court are not clearly erroneous, and are not in dispute. SWSM operated between 1978 and 1981 as a non-transporting reseller of crude oil. Kellogg Desig. No. 36, p. 2. On October 8, 1982, SWSM was placed into an involuntary Chapter 11 proceeding. *Id.* The Chapter 11 proceeding was converted to a Chapter 7 proceeding on February 8, 1985. *Id.* In 1984, the Department of Energy filed a proof of claim alleging that SWSM had violated the DOE petroleum pricing regulations codified at 10 C.F.R. § 212.186. *Id.*

In 1991, the Trustee reached a settlement with the DOE which required SWSM to restore to the DOE a total of $86,646,198, which represented the price overcharges and the accrued pre- and post-petition interest. *Id.* at 3–4.

In SWSM's 1991 tax return, the Trustee sought to accrue the DOE liability and to apply it to the affected tax years as a deduction pursuant to 26 U.S.C. § 1341.[1] Such application would eliminate SWSM's taxable income for each year between 1978 and 1984,

and result in an $11,079,182 decrease in prior years' tax, which is claimed by the Trustee as an overpayment for the 1991 tax year.[2] *Id.* at 4–5.

The Trustee argues that the bankruptcy court erred in holding that SWSM had not established a right to the claimed refund, and that neither 26 U.S.C. § 6411(d)(2) nor 11 U.S.C. § 505(b) operate as statutes of limitations barring the government from contesting SWSM's entitlement to the refund. The Trustee also argues that the government's failure to follow certain treasury regulations estop it from contesting the refund claim. The Trustee is wrong in all respects.

## II. ANALYSIS

### A. 26 U.S.C. § 6411(d)(2) is Not a Statute of Limitations

■ The Internal Revenue Code requires the IRS to review an application for a tentative refund (Form 1139), determine the amount of the overpayment, and apply, credit or refund any overpayment within 90 days from (1) the date the application was filed or (2) the date of the overpayment (determined under § 1341(b)(1)), whichever is later. 26 U.S.C. § 6411(d)(2). It is undisputed that the deadline for IRS action on the Trustee's Form 1139 was May 16, 1992, and that no determination was made by that date. Kellogg Desig. No. 36, p. 6.

The Trustee argues that because the IRS failed to disallow the claim for a tentative refund within the requisite period, it is now required to turn over the requested funds. The Trustee's reliance on Rev.Rul. 78–369, 1978–2 C.B. 324, and Rev.Rul. 84–175, 1984–2 C.B. 296 is misplaced. Both Revenue Rulings address the question of when the Commissioner may rely on a proposed deficiency to deny a properly filed application for a tentative refund. Neither has any bearing on the question of whether 26 U.C.C.

---

1. The government does not concede SWSM's right to a refund under § 1341, but the issue was not reached below. Kellogg Desig. No. 36, p. 4, n. 2.

2. Adding up the figures used by the bankruptcy court results in a total refund of $11,088,172. *See* Kellogg Desig. No. 36, p. 4. It appears,

however, that the discrepancy is due to typographical errors in the bankruptcy court's opinion. The amount for 1978 should be $4,867,790, and the amount for 1982 should be $2,566. *See* Kellogg Desig. No. 1, document entitled "The Bankruptcy Estate of Southwestern States Marketing Corporation," p. 8.

§ 6411(d)(2) operates as a statute of limitations.

Similarly, the Trustee's claim that the clear language of the statute must be enforced is misleading, since the statute provides no sanction for the Commissioner's failure to act within the prescribed period. Indeed, the only caselaw on this issue demonstrates that the Trustee's position is without merit. *See Zarnow v. Commissioner,* 48 T.C. 213, 1967 WL 933 (1967) (Commissioner's failure to act within 90 days on claim for tentative carryback adjustment does not bar Commissioner from later assessing a deficiency for year of claimed loss); *Thrif–Tee v. United States,* 492 F.Supp. 530, 534 (W.D.N.C.1979), *aff'd,* 628 F.2d 1351 (4th Cir. 1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981) (Commissioner's failure to timely determine taxpayer's claim for tentative refund does not bar Commissioner from challenging taxpayer's entitlement to refund in later suit). The Trustee has not cited any caselaw to the contrary. The bankruptcy court's ruling on this issue was correct.

### B. 11 U.S.C. 505(b) Does Not Apply

■ The Trustee filed his claim for a refund by marking the refund box on SWSM's 1991 tax return (Form 1120). Kellogg Desig. No. 36, p. 6, n. 3. The tax return was accompanied by the Trustee's request for expedited determination of tax liability under Bankruptcy Code § 505(b). The Trustee argues that the IRS is time barred from challenging the estate's right to the claimed refund because it failed to properly notify the Trustee that the return had been selected for examination within 60 days, as required by 11 U.S.C. § 505(b)(1)(A), and failed to complete the examination within 180 days, as required by 11 U.S.C. § 505(b)(1)(B). The Trustee's argument is without merit.

Bankruptcy Code § 505(b) governs requests for "determination of any unpaid tax liability of the estate for any tax incurred during the administration of the estate. . . ." 11 U.S.C. § 505(b). Its purpose "is to protect the trustee from personal liability for a tax falling on the estate that is not assessed until after the case is closed." *See* H.R.Rep.

No. 595, 95th Cong., 1st Sess. 356 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6312. Section 505(b) makes no mention of, and has no applicability to, refund claims, which is what is at issue in this case. The time limits for IRS action in § 505(b) thus have no relevance here, as the Trustee never sought IRS determination of any unpaid tax liability.

■ Claims for a tax refund are governed by 11 U.S.C. § 505(a)(2)(B), which provides that the bankruptcy court will not have jurisdiction to hear such claims until 120 days after the trustee makes a claim with the IRS. 11 U.S.C. § 505(a)(2)(B)(i). The statute thus clearly contemplates that the IRS may not act within the 120 day period. The Trustee's suggestion in the bankruptcy court that the IRS cannot contest any claims it has not rejected within the 120 day period is thus completely frivolous. The bankruptcy court also rejected the Trustee's 505(b) argument on two alternative grounds, neither of which need be addressed given the holding above.

### C. The "Accepted as Filed" Letter

■ The Trustee also argues that the IRS is barred from litigating the merits of the his claim for a refund, because on March 13, 1992, the Dallas Director of the IRS notified the Trustee that his Form 1120 had been "accepted as filed." *See* Kellogg Desig. No. 36, p. 5. The Trustee claims that the "accepted as filed" letter constitutes the IRS's determination of the merits of his claim, *see* Treas.Reg. § 601.105(d)(1), and that the IRS never properly reopened its examination of the return. *See* Treas.Reg. § 601.105(j)(1). He therefore concludes that the IRS is now estopped from litigating the merits of the claimed deduction.

■ The bankruptcy court did not address this argument, and it is not clear that it was raised below in the form presented to this Court. *See* Kellogg Desig. No. 15, p. 7. Claims not presented below are waived on appeal. *See In re Moody,* 849 F.2d 902, 905 (5th Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988). However, to the extent Trustee can be considered to have raised the argument below, it is without merit.

In *Office of Personnel Management v. Richmond*, 496 U.S. 414, 416, 110 S.Ct. 2465, 2467, 110 L.Ed.2d 387 (1989), the Court held that payments of money from the Federal Treasury are limited to those authorized by statute. *See* U.S. Const., Art. I, § 9, cl. 7. The Court therefore concluded that estoppel could not lie against the government to compel a payment in contravention of a federal statute. Precluding the government from litigating the merits of the Trustee's claim here would require payment in violation of 26 U.S.C. §§ 461(h)(4) and 446(b). The government is not barred from challenging the Trustee's right to the deduction.

### D. The Trustee is not Entitled to a Deduction

The bankruptcy court found that the trustee was not entitled to a deduction based on the DOE liability both because the "all events" test of 26 U.S.C. § 461(h)(4) had not been met, and because the claimed deduction was not an accurate reflection of income, as required by 26 U.S.C. § 446(b). The bankruptcy court was correct as to both conclusions.

### 1. The "All Events Test"

■ Section 461 of the Internal Revenue Code specifies that an accrual basis taxpayer may claim a deduction for a future expense only when "all events have occurred which determine the fact of liability and the amount of such liability can be determined with reasonable accuracy." 26 U.S.C. § 461(h)(4). The Trustee argues that the settlement with the DOE satisfies that all events test, because the fact and amount of liability are certain. The Trustee's argument on this issue ignores the facts of this case as found by the bankruptcy court.

The Trustee has pointed the Court to a number of decisions holding or stating that the *possibility* of non-payment of an obligation otherwise fixed both in amount and law does not defeat accrual of the expense as a deduction before it is actually paid. *See, e.g., United States v. Hughes Properties*, 476 U.S. 593, 106 S.Ct. 2092, 90 L.Ed.2d 569 (1985); *Lawyers Title Guaranty Fund v. United States*, 508 F.2d 1 (5th Cir.1975). This rule has no application to the case at bar.

The bankruptcy court found that "no likelihood of repayment existed" with respect to the DOE obligation. Kellogg Desig. No. 36, p. 12. The Trustee would have the Court interpret this statement as meaning that there was simply a possibility that the obligation would not be paid. The Trustee's interpretation is not supported by the bankruptcy court's decision, nor is it supported by the evidence. The court noted that SWSM's bankruptcy schedules, tax return, and report to the DOE all indicated that at all relevant times SWSM was insolvent. *Id.* at 12–13. SWSM's 1991 tax return indicated only $68,-602.86 in assets available to meet the DOE obligation.[3] The court also pointed out that SWSM ceased operating in 1982, and has never resumed its business operations. *Id.* at 12. SWSM is currently in Chapter 7 liquidation proceedings. *Id.* at 2. There is thus no chance that the DOE liability will be paid, and the bankruptcy court so found. Cases holding that the possibility of non-payment does not defeat accrual of a fixed liability are thus inapposite.

■ When there is no prospect of payment, the all events test has not been met because the liability is not fixed. *See Brainard v. Commissioner*, 7 T.C. 1180, 1184 (1946); *Cohen v. Commissioner*, 21 T.C. 855, 856 (1954). The Trustee's argument that *Fahs v. Martin*, 224 F.2d 387 (5th Cir.1955) establishes a different rule in the Fifth Circuit is not persuasive. In *Fahs*, the trustee of a bankrupt taxpayer sued to recover a deduction for the interest owed on defaulted interest coupons. The court held that "interest on an unconditional legal obligation is deductible for income tax purposes by an

---

**3.** The bankruptcy court rejected the Trustee's attempt to list the claimed tax refund as an asset available to pay SWSM's debts, since to do so assumes the very argument the Trustee must prove. Kellogg Desig. No. 36, p. 13, n. 14. The bankruptcy court also rejected the Trustee's listing of over 4 million dollars in investments in bankrupt subsidiaries as an asset, since "there was no possibility that this investment would be recouped by the parent and available as an asset...." *Id.* at n. 15. The Trustee did not challenge these findings on appeal.

accrual basis taxpayer, notwithstanding the improbability of its being paid...." *Id.* at 395. *Fahs* did not answer the question of whether *impossibility* of payment would defeat accrual. In fact, the court specifically noted that "the reorganization proceeding is still pending and the property of the debtor is being operated by the trustee." *Id.* at 390. The possibility of payment was thus clearly contemplated.

 Furthermore, *Fahs'* precedential value has been undermined by subsequent Fifth Circuit caselaw. In *Burlington–Rock Island R.R. Co. v. United States,* 321 F.2d 817 (5th Cir.1963), *cert. denied,* 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed.2d 306 (1964), the court criticized *Fahs* as "carry[ing] accrual about as far as it can go." *Burlington,* 321 F.2d at 819. In addition, *Tampa & Gulf Coast R.R. Co. v. Commissioner,* 469 F.2d 263 (5th Cir.1972), which the Trustee cites as reaffirming *Fahs* in fact limits its application. The court in *Tampa* noted that the taxpayer had cited *Fahs* for the principle that an accrual method taxpayer's inability to pay interest obligations does not prevent deductibility. However, the court held that the holding must give way in extreme circumstances. *Tampa* 469 F.2d at 264. Impossibility of payment, as distinguished from current inability, is a sufficiently extreme circumstance to preclude deduction under 26 U.S.C. § 461(h)(4).

#### 2. Accurate Reflection of Income

The bankruptcy court also held that accruing the deduction in 1991 was improper because to do so would not clearly reflect income as required by 26 U.S.C. § 446(b). The Trustee's argument that 26 U.S.C. § 448(a)(2) bars the Court from prohibiting the accrual is utterly devoid of merit. The latter section prohibits SWSM from using the cash receipts and disbursements method of accounting to keep its books. It does not bar the IRS or the Court from finding that the accrual method of accounting as applied to a particular item is not an accurate reflection of income. Similarly, the Trustee's suggestion that only the Commissioner of the IRS can make the decision to reject a taxpayer's method of accounting for a particular item is so frivolous as to be unworthy of analysis.

The bankruptcy court's decision on the § 446(b) issue finds support in the Fifth Circuit's opinion in *Mooney Aircraft, Inc. v. United States,* 420 F.2d 400 (5th Cir.1969). The taxpayer there sought to accrue, in the year of issuance, the liability for bonds given to purchasers of its aircraft which were payable when the planes were retired from service. Even though the court found that the all events test was met, it held that the IRS could refuse the deduction under 26 U.S.C. § 446(b) because the lengthy time span between issuance and payment, and the uncertainty of payment, made it improper to consider the bonds as a current expense in the year of issue. *Mooney,* 420 F.2d at 410. In the present case there is not just a lengthy time between when the obligation arises and when it will be paid, but an impossibility that it will be paid. Treating the DOE liability as a current expense thus distorts income, and is improper under 26 U.S.C. § 446(b).

### III. CONCLUSION

The Trustee's claim for a refund is barred by 26 U.S.C. §§ 446(b) and 461(h)(4). The judgment of the bankruptcy court is **AFFIRMED.**

SO ORDERED.