# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

——————

No. 98-3941

——————

John L. Brassard,

    Appellant,

v.

United States of America,

    Appellee.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Minnesota.

——————

Submitted: June 16, 1999
Filed: July 29, 1999

——————

Before LOKEN and MAGILL, Circuit Judges, and JONES,[*] District Judge.

——————

MAGILL, Circuit Judge.

John L. Brassard, a limited partner in a partnership, appeals from the district court's[1] order denying his request to readjust the partnership's 1983 income tax return to reflect a tax credit for expenses related to the rehabilitation of a historic building. We affirm.

———————————————

[*]The Honorable John B. Jones, Senior United States District Judge for the District of South Dakota, sitting by designation.

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

# I.

In 1979, the Amherst H. Wilder Foundation (Foundation) joined with the City of St. Paul, Minnesota to redevelop a 210 acre site in the Midway area of St. Paul, known today as "Energy Park." To facilitate renovation of historic buildings on its plot of land within Energy Park, the Foundation formed the AHW Corporation (AHW). AHW developed a plan to convert these buildings into a hotel, medical clinic, museum, housing complex, and retail facility.

AHW initially intended to finance its redevelopment efforts through St. Paul Port Authority bond offerings and Foundation equity contributions. However, as the redevelopment efforts progressed, AHW realized that the bond proceeds and Foundation equity contributions would not be sufficient to cover expenses and sustain operations. To acquire additional funding, AHW formed a limited partnership syndication, called the Bandana Square Limited Partnership No. 1 (Partnership), through which outside investors contributed capital in exchange for limited partnership interests in the project. AHW was the general partner, and the limited partners, including Brassard, were admitted to the Partnership on November 17, 1983 upon execution of a "First Amended Limited Partnership Agreement and Certificate of Limited Partnership" (Agreement).

The Agreement provided for various fees and reimbursements to be paid by the Partnership to AHW for services rendered. In relevant part, the Agreement provided for compensation to AHW of a "Developer's Fee" in the amount of $1.62 million. The Agreement stated:

> Upon admission of the Limited Partners to the Partnership, a Developer's Fee in the amount of $1,620,000 (the "Guaranteed Fee") will be due to the General Partner. The Partnership shall pay the General Partner simple

interest on the outstanding amount of the Guaranteed Fee at the rate of 9% per annum, and which fee shall be evidenced by the Developer's Fee Note. The Developer's Fee Note requires payments of principal and interest to be made only to the extent of available cash.

Agreement at 19. The Partnership did not execute the Developer's Fee Note referenced in the Agreement until sometime after December 31, 1983.

On its 1983 income tax return, the Partnership claimed a twenty-five percent tax credit for the $1.62 million it agreed to pay AHW for the Developer's Fee. The Partnership claimed that it incurred the Developer's Fee expense in the 1983 tax year and that the Fee qualified for the twenty-five percent tax credit available for expenses incurred in the rehabilitation of certified historic structures. See 26 U.S.C. § 46(a)(2)(A)(iv), (F)(i) (1982). The Internal Revenue Service disagreed and adjusted the Partnership's 1983 tax return to deny it the rehabilitation tax credit. Brassard filed suit against the government seeking readjustment of the Partnership's return to reflect the tax credit. The government moved for summary judgment, and a magistrate judge[2] recommended that the motion be granted on the ground that the Partnership did not incur the Developer's Fee expense in the 1983 tax year because its liability for the Fee was not fixed and absolute. The district court adopted the magistrate judge's report and recommendation, and granted summary judgment to the government. This appeal followed.

## II.

We review the district court's grant of summary judgment de novo. See Chernin v. United States, 149 F.3d 805, 808 (8th Cir. 1998). Summary judgment is appropriate

---

[2]The Honorable John M. Mason, United States Magistrate Judge for the District of Minnesota.

when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). Because the material facts in this case are not in dispute, we only address whether the government was entitled to judgment as a matter of law.

This appeal requires us to determine whether the Partnership incurred the Developer's Fee expense in the 1983 tax year.[3]  An expenditure is incurred by a taxpayer when "such expenditure[] would be considered incurred under an accrual method of accounting." Treas. Reg. § 1.48-12(c)(3) (1999). Under the accrual method of accounting, an expenditure is incurred when "all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." Id. § 1.461-1(a)(2) (1983). Accordingly, a taxpayer may treat an expense as incurred when its liability for that expense is fixed and absolute. See United States v. Hughes Properties, Inc., 476 U.S. 593, 600 (1986). However, if a taxpayer's liability for an expense is only contingent or conditional (i.e., it is not fixed and absolute), the taxpayer may not treat that expense as incurred. See id. at 600; see also Fox v. Commissioner, 874 F.2d 560, 563 (8th Cir. 1989) ("Accrual of an expense may not be predicated on the probability that a legal obligation to pay will arise at some point in the future.").

Brassard argues that the Partnership's liability for the Developer's Fee was fixed in November 1983, when the limited partners executed the Agreement. The government counters that the Partnership's liability for the Developer's Fee was only conditional in 1983 under the terms of the Agreement. We agree with the government.

Under the terms of the Agreement, the Partnership was obligated to pay the

---

[3]The government presents several other arguments why the Partnership's claimed tax credit was improper. Because our resolution of this issue is dispositive, we need not consider these alternative arguments.

Developer's Fee "only to the extent of available cash."[4] Agreement at 19. We interpret this provision of the Agreement as imposing only a conditional liability because the Partnership's obligation to pay does not arise until or unless it has "available cash." See, e.g., Putoma Corp. v. Commissioner, 601 F.2d 734, 739-40 (5th Cir. 1979) (holding that corporation's liability not fixed when obligation to pay did not arise until board of directors determined that corporation had sufficient cash reserves to make payments); Burlington-Rock Island R.R. v. United States, 321 F.2d 817, 821 (5th Cir. 1963) (holding that liability not fixed when taxpayer was required to pay to the extent its cash situation would reasonably permit); Pierce Estates, Inc. v. Commissioner, 195 F.2d 475, 477-78 (3d Cir. 1952) (holding that liability not fixed when obligation to pay was contingent upon availability of net income as declared by taxpayer's board of directors).  To the extent the Partnership lacks or avoids having available cash, no enforceable liability exists.  Because the Partnership did not have available cash in 1983,[5] it had no fixed obligation to pay the Developer's Fee and, thus, improperly treated the Fee as an accrued expense.

Our interpretation of these facts is in accord with the Fifth Circuit's decision under similar circumstances.  See Burlington-Rock Island, 321 F.2d at 817-22.  In Burlington-Rock Island, the taxpayer was contractually obligated to pay down its debts "from time to time, insofar as its cash situation will reasonably permit." Id. at 821 (quotation marks omitted).  The taxpayer deducted from income the amount of interest that had accumulated during the year on a portion of the debt covered by the contract. The court held that the deduction was improper because the taxpayer's liability for the

---

[4]Although the Agreement contemplated execution of the Developer's Fee Note, we assume, without deciding, that the Agreement itself was a valid contract imposing an obligation upon the Partnership to pay the Developer's Fee in accordance with the Agreement's terms.

[5]In fact, the Partnership never made any payments to AHW for the Developer's Fee.

interest was not fixed and absolute during the relevant tax year; instead, the taxpayer's obligation to pay was contingent upon its "cash situation." See id. Because the taxpayer had no legal obligation under the contract to pay the interest until the contingency was satisfied, its liability for the interest was not fixed and, thus, did not accrue for tax purposes. See id. We find Burlington's reasoning directly applicable to this case and apply it to conclude that the Partnership's liability for the Developer's Fee was not fixed in the 1983 tax year. The government, therefore, properly disallowed accrual of the expense for purposes of the rehabilitation tax credit claimed on the Partnership's 1983 income tax return.

Brassard argues that the "available cash" provision addresses only the timing of payments and says nothing about the Partnership's liability for the Developer's Fee. Brassard correctly observes that the timing or likelihood that a liability will be satisfied by payment is irrelevant to the determination of whether the liability itself is fixed at a given point in time. See Hughes, 476 U.S. at 606 ("'The existence of an absolute liability is necessary; absolute certainty that it will be discharged by payment is not.'" (quoting Helvering v. Russian Finance & Constr. Corp., 77 F.2d 324, 327 (2d Cir. 1935)). However, we disagree with Brassard's characterization of the "available cash" provision as one concerning only the timing of payment. Under the terms of the Agreement, the Partnership had no legal obligation to pay the Developer's Fee until it had available cash. Although the available cash provision does affect the timing of payment, it also establishes the fact of liability. If the Partnership does not have available cash, it has no liability for the Developer's Fee. Therefore, we reject Brassard's argument that the available cash provision affects only the timing of payment, not the contingent nature of the Partnership's liability.

Brassard also contends that we should reach a different result in this case because the Agreement provided that the Developer's Fee was to be paid from the Partnership's assets if the Partnership was dissolved and its assets liquidated. See

Agreement at 31.[6]  We reject this argument because this fact does not change the contingent nature of the Partnership's liability for the Developer's Fee.  Like the "available cash" provision of the Agreement discussed above, the liquidation clause imposes only a conditional obligation on the Partnership to pay the Developer's Fee.  Under this clause, the Partnership must pay the Developer's Fee if it has assets remaining after liquidation.  However, if the Partnership has no assets to liquidate in satisfaction of the Fee, the Partnership does not incur any liability for the Fee.  Thus, like the "available cash" provision, the liquidation clause imposes a conditional obligation to pay the Fee only if the Partnership has cash available after liquidation.  Because the Partnership's liability for the Developer's Fee is contingent even under the liquidation clause of the Agreement, we conclude that the Partnership improperly treated it as an expense incurred in the 1983 tax year for purposes of the rehabilitation tax credit.

## III.

In sum, we agree with the magistrate judge's and the district court's conclusions that the Partnership did not incur the Developer's Fee expense in 1983 because its

---

[6]The Agreement provided:

> The General Partner or other persons winding up the affairs of the Partnership shall promptly proceed to the liquidation of the Partnership and, in settling the accounts of the Partnership, the assets and the property of the Partnership shall be distributed in the following order of priority:
>> (a) To the payment of all debts and liabilities of the Partnership, including expenses of liquidation, the Developer's Fee Note, other than any loans or advances that may have been made by the Partners to the Partnership under Article VIII hereof, but including any loans evidenced by Project Notes, in the order of priority as provided by law . . . .

Agreement at 31.

liability for the Fee was only conditional. We, therefore, AFFIRM the district court's grant of summary judgment to the government.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.