**In re WEST TEXAS MARKETING CORPORATION, Debtor.**

**Walter KELLOGG, Trustee for West Texas Marketing Corporation, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 182–10034–7. Adv. No. 192–1018.**

United States Bankruptcy Court, N.D. Texas, Abilene Division.

June 22, 1993.

Brett B. Flagg, Gardere & Wynne, L.L.P., Dallas, TX, for plaintiff.

Dinah L. Bundy & Mr. Michael S. Copeland, Attys., Tax Div. Dept. of Justice, Dallas, TX, for IRS.

**400**

Walter Kellogg, Trustee–in–Bankruptcy, Dallas, TX, Chapter 7 Trustee.

## MEMORANDUM OF OPINION ON POSTPETITION INTEREST ON UNSECURED CLAIMS

JOHN C. AKARD, Bankruptcy Judge.

### QUESTIONS PRESENTED

I. Whether in a case under Chapter 7 of the Bankruptcy Code,[1] the Debtor can accrue postpetition interest expense deductions for federal income tax purposes on undisputed and resolved general unsecured (prepetition) claims. The court concludes that the Debtor cannot accrue postpetition interest expense on prepetition claims for federal income tax purposes.[2]

II. Whether § 505(b) bars assessment of an estimated tax penalty on the Debtor's estate because the Internal Revenue Service (IRS) assessed the penalty more than 60 days after the estate requested a prompt determination of unpaid tax liability and did not select the Debtor's income tax return for examination. The court concludes that the IRS assessment of the estimated tax penalty was proper, that § 505(b) does not bar collection, and that the Debtor's estate is liable for the penalty.

### FACTS [3]

West Texas Marketing Corporation (WTMC) is incorporated under the laws of Texas. WTMC maintained its accounting records and calculated its federal income tax liability using the accrual method of accounting. On May 14, 1982, WTMC filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On December 7, 1983, the court converted WTMC's reorganization to a Chapter 7 liquidation. Plaintiff did not accrue interest expense deductions for WTMC's undisputed and resolved general unsecured (prepetition) claims on the U.S. Corporation Income Tax Returns (Forms 1120) filed for WTMC's taxable year(s) ended (TYE) September 30, 1982 through September 30, 1989.

Plaintiff reflected postpetition interest expense deductions on prepetition claims on WTMC's Amended U.S. Corporation Income Tax Returns (Forms 1120X) for TYE September 30, 1988 and September 30, 1989. Likewise, part of the net operating loss (NOL) deductions claimed on WTMC's Forms 1120X for TYE September 30, 1988 and September 30, 1989 were the result of accruals of interest expense for WTMC's prepetition claims for WTMC's TYE September 30, 1982 through September 30, 1987.

On WTMC's Forms 1120X for TYE September 30, 1988, September 30, 1989, and September 30, 1991, Plaintiff computed postpetition interest expense deductions on its prepetition claims using the six percent Texas "legal rate."

During WTMC's TYE September 30, 1982 through September 30, 1987, and September 30, 1989 through September 30, 1991, total filed claims, as well as undisputed and resolved claims in WTMC's bankruptcy proceedings alone, exceeded WTMC's assets. On the other hand, during WTMC's TYE September 30, 1988, WTMC's assets exceeded undisputed and unsecured claims but not total filed claims.

On June 15, 1990, Plaintiff timely filed a Form 1120 for WTMC's TYE September 30, 1989 reflecting a tax liability of $366,468, payments of $367,000, and requested a refund of $532, the difference between the two amounts. This Form 1120 reported that WTMC was not liable for any estimated tax penalties. Also, Plaintiff filed this Form 1120 with a request for prompt determination pursuant to § 505(b).

---

1. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* Unless otherwise noted, references to section numbers are references to sections in the Bankruptcy Code.

2. This court has jurisdiction over this matter under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

3. The court adopts the parties' Stipulated Facts filed on November 5, 1992. The court will state only such facts as are necessary to an understanding of its decision.

On July 17, 1990 the IRS accepted WTMC's Form 1120 for TYE September 30, 1989 as filed. This IRS acceptance of WTMC's Form 1120 for the TYE September 30, 1989, meant that the IRS did not select the tax return for examination.

On October 1, 1990, the IRS assessed an estimated tax penalty of $23,044.58 against WTMC for its TYE September 30, 1989, because WTMC did not make estimated tax payments for that taxable year as required by law. On November 4, 1991, the IRS set off the $23,044.58 against a refund due to WTMC for TYE September 30, 1988. On October 25, 1991, Plaintiff timely filed a Form 1120X for WTMC's TYE September 30, 1988, which reflected previously unreported interest expense deductions and constituted a claim for refund in the amount of $1,999,887. Such figure also included two allowed deductions by the IRS: $39,910 for previously omitted percentage depletion deductions and a $1,270,185 NOL carryback.

On the same date, Plaintiff timely filed a Form 1120X for WTMC's TYE September 30, 1989, which reflected postpetition unreported interest expense deductions on prepetition claims and constituted a claim for refund in the amount of $366,468, the tax liability originally reported on Form 1120. On November 6, 1991, Plaintiff timely filed a Form 1120 for WTMC's TYE September 30, 1991 reflecting no tax liability. The IRS timely notified Plaintiff that the IRS selected WTMC's Form 1120 for that period for examination.

On or about January 31, 1992, the District Director of Internal Revenue mailed Plaintiff a Notice of Determination of Additional Tax and Disallowance of Refund Claims. The IRS notice disallowed WTMC's refund claims in Forms 1120X for TYE September 30, 1988 and September 30, 1989 for postpetition interest expense deductions on prepetition claims. Additionally, the IRS notice informed Plaintiff that IRS had determined WTMC owed $83,885 in additional taxes for TYE September 30, 1991.

## POSITIONS OF THE PARTIES

I. Plaintiff argued that postpetition interest accrues on allowed prepetition claims at the "legal rate" pursuant to § 726(a)(5). Alternatively, Plaintiff argued that state law determines the validity of creditors' claims and that the claims bear interest at the statutory rate. Therefore, Plaintiff sought to recover refunds and corresponding interest on federal taxes overpaid by WTMC to the IRS for TYE September 30, 1988 and September 30, 1989. Additionally, Plaintiff disputed the IRS determination of additional federal income tax due for WTMC's TYE September 30, 1991 based on the same arguments discussed above.

The IRS argued that WTMC could. not accrue interest expense deductions for federal income tax purposes for its prepetition claims in any of WTMC's taxable years ending September 30, 1982 through 1991.

II. Pursuant to § 505(b), Plaintiff sought to compel the turnover of a portion of an approved refund of federal income taxes for WTMC's TYE September 30, 1988 erroneously set off against an improper assessment of estimated tax penalties for WTMC's TYE September 30, 1989.

The IRS contended that assessment and collection of the estimated tax penalty for WTMC's TYE September 30, 1989 was proper and was not barred by § 505(b).

### STATUTES

11 U.S.C. § 501 states in pertinent part:

(a) A creditor or an indenture trustee may file a proof of claim.

11 U.S.C. § 502 states in pertinent part:

(a) A claim ... filed under § 501 of this title, is deemed allowed, unless a party in interest ... objects.

(b) [I]f such objection to a claim is made, the court ... shall allow such claim in such amount except to the extent that—

. . . .

(2) such claim is for unmatured interest.

11 U.S.C. § 505(b) states in pertinent part:

(b) A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the adminis-

tration of the case.... Unless such return is fraudulent, or contains a material misrepresentation, the trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax—

(1) upon payment of the tax shown on such return if—

(A) such governmental unit does not notify the trustee, within 60 days after such request, that such return has been selected for examination.

11 U.S.C. § 726 states in pertinent part:
(a) [P]roperty of the estate shall be distributed—

. . . .

(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection.

TEX.REV.CIV.STAT.ANN. art. 5069–1.03 states:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

I.R.C. § 163(a) states in pertinent part:
(a) There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

I.R.C. § 448 states in pertinent part:
(a) [I]n the case of a—

(1) C corporation,

. . . .

taxable income shall not be computed under the cash receipts and disbursements method of accounting.

I.R.C. § 461(h) states in pertinent part:
(1) [I]n determining whether an amount has been incurred with respect to any item during any taxable year, the all events test shall not be treated as met any earlier than when economic performance with respect to such item occurs.

Treas.Reg. § 1.461–1(a)(2)(i) states:

(2) Taxpayer using an accrual method—
(i) In general. Under an accrual method of accounting, a liability ... is incurred, and generally is taken into account for Federal income tax purposes, in the taxable year in which all the events have occurred that establish the fact of the liability, the amount of the liability can be determined with reasonable accuracy, and economic performance has occurred with respect to the liability.

## DISCUSSION

I. Both state law and bankruptcy law are sources of liability for postpetition interest on general unsecured claims. In *Federal Sav. & Loan Ins. Corp. v. Moneymaker (In re A & L Properties)*, 96 B.R. 287 (C.D.Cal.1988), the court interpreted the "legal rate" at which interest must be paid pursuant to § 726(a)(5) to be the contract rate where applicable and, alternatively, the rate of interest under state law. In Texas, the applicable legal rate of interest is six percent. TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon 1979).

Regarding § 726, the First Circuit stated that when a debtor does not have an independent obligation to pay interest with respect to a claim, the bankruptcy court has the power to award interest on the theory that there has been a detention by the bankruptcy court of the monies due. *Debentureholders Protective Comm. v. Continental Inv. Corp.*, 679 F.2d 264, 268 (1st Cir.), *cert. denied*, 459 U.S. 894, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982).

As a general rule, I.R.C. § 163(a) allows as a deduction all interest paid or accrued within the taxable year of indebtedness. I.R.C. § 461(a) states that the amount of any deduction allowed shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income. Under I.R.C. § 448, WTMC is required to use the accrual method of accounting. WTMC does so.

Under I.R.C. § 461 and Treas.Reg. 1.461–1(a)(2)(i), the present deduction of a future expense is allowed for the taxable year in which all events occurred which

establish the fact of the liability, the amount of such liability can be determined with reasonable accuracy, and economic performance has occurred with respect to such liability (the "all events" test).

In the case of interest, economic performance occurs with the passage of time. H.R.CONF.REP. No. 861, 98th Cong., 2d Sess. 875, *reprinted in* 1984 U.S.C.C.A.N. 697, 1563. Regarding the determination of the amount of the liability, the parties do not dispute that six percent, as established by the Texas statute, is a reasonable figure. The issue remaining is whether, in a Chapter 7 liquidation, postpetition interest on general unsecured claims is a fixed obligation of the debtor's estate. The case authority on this issue is both limited and sharply divided.

■ In bankruptcy proceedings, as a general rule, postpetition interest on general unsecured claims is not allowed. Under § 501, a trustee may file a proof of claim in a bankruptcy proceeding for interest or, as stated above, under § 726(a)(5), the bankruptcy court has the power to award interest on any allowed claim paid. However, § 502 determines which claims are allowed. Section 502(b)(2) specifically disallows claims for unmatured interest in bankruptcy proceedings.

In a Chapter X case under the prior Bankruptcy Act, *In re Continental Vending Mach. Corp.*, 1977–1 U.S. Tax Cas. (CCH) ¶ 86,093, 1976 WL 913 (E.D.N.Y. Nov. 19, 1976), the court denied an interest deduction and held that no actual liability for interest existed under either a legal condition making the liability contingent upon the happening of a future event or an economic improbability of payment. *Id.* at ¶ 86,096. *See also Burlington–Rock Island R.R. Co. v. United States*, 321 F.2d 817 (5th Cir.1963), *cert. denied*, 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed.2d 306 (1964) (economic improbability of payment of the taxpayer's obligations prevented it from deducting interest owed on the obligations); *Guardian Inv. Corp. v. Phinney*, 253 F.2d 326, (5th Cir.1958) (legal condition making the principal and interest on a second mortgage owed and payable only upon prior mortgage precluded accrual and deduction of interest).

The trustee asserted that accrual of postpetition interest on unsecured claims is allowed under the Fifth Circuit's holding in *Fahs v. Martin*, 224 F.2d 387 (5th Cir.1955) (improbability of payment due to insolvency is not a justification for disallowing the accrual of interest on a secured obligation). However, the *Continental Vending* court observed that the Fifth Circuit has not followed its own decision in *Fahs v. Martin* in its subsequent cases that characterize that decision as "about as far as [accrual] can go." *Continental Vending*, 1977–1 U.S. Tax Cas. at ¶ 86,097; *Burlington*, 321 F.2d at 819.

The trustee further asserted that *Fahs* is still good law. In *Southeastern Mail Transport, Inc. v. Commissioner*, 63 T.C.M. (CCH) 2893, 1992 WL 86031 (1992), the tax court considered an interest accrual issue and concluded that the *Fahs* rule still governs in the Fifth and Eleven Circuits. *Id.* at 2906. However, *Southeastern Mail* is not a bankruptcy case and the accrual of interest expense arose from a fixed obligation, a contract for the purchase of business assets. *Id.* at 2903–2904. Both *Fahs* and *Southeastern Mail* involved secured obligations, which generate different treatment than unsecured obligations. Therefore, this court declines to follow *Fahs* and its progeny in this case.

■ Additionally, the trustee argued that in Revenue Ruling 70–367, the I.R.S. acknowledged the appropriateness of the accrual and deduction of expenses when the taxpayer is insolvent. Rev.Rul. 70–367, 1970–2 C.B. 37. Revenue Ruling 70–367 involved the accrual of interest expense on bonds by a railroad during the pendency of reorganization proceedings. The contractual obligation arose before reorganization proceedings. The ruling concluded that under the facts, accrual was proper. However, a revenue ruling's precedential value is limited to the facts of a particular transaction. REV.PROC. 89–14, 1989–1 C.B. 814, 815. The facts in our case differ from those of the case considered in Revenue Ruling 70–367. In WTMC's case, the obligation was statutorily set and the potential for payment arose during bankruptcy pro-

ceedings. Thus, this court declines to follow such precedent.

■ Section 726(a)(5) conditions payment of postpetition interest on any allowed claim on payment in full of all claims under paragraphs (1), (2), (3), or (4) of the subsection. Thus, any obligation to pay postpetition interest on general unsecured claims is not fixed until the bankruptcy estate pays in full the principal amount of all allowed claims in full. § 726(a)(5); *In re Boston and Maine Corp.,* 719 F.2d 493 (1st Cir. 1983), *cert. denied,* 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984). *See also In re Oahu Cabinets, Ltd.,* 12 B.R. 160 (Bankr.D.Hawaii 1981) (exception to non-payment of postpetition interest on unsecured claims where existence of surplus after all creditors are otherwise paid in full); *Thompson v. Kentucky Lumber Co. (In re Kentucky Lumber Co.),* 860 F.2d 674 (6th Cir.1988) (unsecured creditors not entitled to postpetition interest where the debtor was considered insolvent at confirmation but subsequently obtained a large unexpected settlement of a pending suit).

The trustee's argument for postpetition interest on unsecured claims under article 5069–1.03 of the Texas Revised Civil Statutes fails for the same reasons. Under article 5069–1.03, interest on claims starts "on the thirtieth (30th) day from and after the time *when the sum is due and payable.*" Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1979) (emphasis added). In a bankruptcy proceeding, postpetition interest on unsecured claims is due and payable upon payment of the allowed claims and only if there is surplus. Thus, the liability is not fixed under the "all events" test in I.R.C. § 461 and, under *Continental Vending,* interest accrual is not allowed.

The facts revealed that WTMC was insolvent during taxable years ending September 30, 1982 through September 30, 1987, and September 30, 1989 through September 30, 1991. On the other hand, during WTMC's taxable year September 30, 1988, WTMC's assets exceeded undisputed and unsecured claims but not total filed claims. Therefore, under the authority of *Continental Vending,* the "all events" test has not been met and WTMC cannot accrue interest for federal income tax purposes

with respect to the general unsecured claims for any of the taxable years ending September 30, 1982 through September 30, 1991, because the accrual is contingent on the legal requirement of payment of all allowed unsecured claims and on the economic ability to do so.

The creditors' right to postpetition interest revives if a Chapter 7 bankruptcy estate ultimately proves to be solvent, and then only if a surplus exists after payment of the principal amounts of all claims. § 726(a)(5); *Continental Vending,* 1977–1 U.S.Tax.Cas. at ¶ 86,097; *Debentureholders Protective Comm.,* 679 F.2d at 268–269. At that time, the holders of allowed unsecured claims are entitled to receive postpetition interest on their claims before any surplus is returned to the debtor. § 726(a)(5); *Debentureholders Protective Comm.,* 679 F.2d at 268–269.

■ II. In *In re Fondiller,* 125 B.R. 805 (N.D.Cal.1991) and *In re Rode,* 119 B.R. 697 (Bankr.E.D.Mo.1990), Chapter 7 trustees filed tax returns on behalf of the estates and requested prompt determination of the estates' tax liabilities under § 505(b). The IRS did not respond within 60 days but, thereafter, it filed tax claims against the estates. As of the date of the IRS tax claims, the estates were still open. The respective courts each concluded that under § 505(b) the bankruptcy estate was not discharged from liability for taxes. Additionally, each court concluded that the estate was not a "successor to the debtor" under that statute. Moreover, these courts found that the legislative history of § 505(b) discusses only discharge of the trustee and the debtor but not of the estate.

The *Fondiller* court observed that the purpose of § 505(b) is to protect the trustee from liability for a tax falling on the estate that is not assessed until after the case is closed. 125 B.R. at 808. The court added that legislative policy to terminate tax liabilities when the IRS does not act quickly to allow estates to close promptly is inapplicable in this case because the estate was not closed when the IRS filed its claim. *Id.*

As of the date of this opinion WTMC's bankruptcy proceeding is still open. Under

the authority of *Rode* and *Fondiller,* § 505(b) does not discharge WTMC's bankruptcy estate for the $23,044.58 estimated tax penalty for WTMC's taxable year ended September 30, 1989, which was assessed outside the 60–day period.

This court's finding that accrual of postpetition interest on unsecured claims is not allowed disposes of the plaintiff's argument that IRS assessment of the estimated tax penalty of I.R.C. § 6655(e) is erroneous.

### CONCLUSION

The court finds that postpetition interest on general unsecured claims for WTMC's taxable years ended September 30, 1982 through September 30, 1991 is not permitted under § 502(b)(2) and § 726(a)(5) because the liability was not fixed as required by the "all events" test of I.R.C. § 461.

Additionally, the court finds that under § 505(b) the bankruptcy estate is not a successor to the debtor. Therefore, the IRS properly assessed the estimated tax penalty for WTMC's taxable year ended September 30, 1989 and the bankruptcy estate is not discharged from this liability.

ORDER ACCORDINGLY.[4]

**4.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052. This Memorandum will be published.